OPINIONS OF THE JUSTICES TO THE HOUSE OF
REPRESENTATIVES.

*Constitutional Law*, Due process of law, Monitoring device in manu-
facturing establishment or factory. *Privacy. Labor. Factory.*

Proposed legislation providing that no employer should operate any
monitoring device for surveillance of employees in a manufacturing
establishment or factory without the express consent of the employees
and unless they had first been notified that such device was in opera-
tion therein was too broad, went far beyond its intent of protecting
the right of privacy of the employees, and would, if enacted, be un-
constitutional. Per WILKINS, C.J., CUTTER, KIRK & REARDON, JJ.;
SPALDING and WHITTEMORE, JJ. concurring; SPIEGEL, J., concurring.

On August 13, 1969, the Justices submitted the following
answers to questions propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit these answers to the questions in an
order adopted by the House of Representatives on July 28,
1969, and transmitted to us on July 31, 1969. The order
recites the pendency before the General Court of a bill,
House No. 5328, a copy of which was annexed to the order.
The bill is entitled "An Act prohibiting the operation of
any device by an employer to monitor certain activities of
his employees." The order states that grave doubt exists as
to the constitutionality of the bill if enacted into law.

The bill amends G. L. c. 149, entitled "Labor and
Industries," by inserting after § 19B the following section:
§ 19C. "No employer shall operate a closed circuit television
system or any other monitoring device in a manufacturing
establishment or factory without the express consent of the
employees, and unless the employees have first been notified

that such system or device is in operation therein. For the purposes of this section 'monitoring device' shall mean any device, either electronic, mechanical, visual or photographic, by means of which surveillance of another person may be effectuated both as to appearance, actions or speech. The superior court shall have jurisdiction in equity to restrain any violation of this section."

The questions are:

"1. Is it constitutionally competent for the General Court to prohibit, through the enactment of House, No. 5328, the exercise by a manufacturer of his right to monitor the manufacturing process in his plant whenever, in connection therewith, human speech, appearance or actions of his employees may be observed or recorded as a part of such monitoring thus interfering with the right of privacy, if any, of such employees?

"2. Would said bill if enacted be repugnant to the right of every person to carry on a business without undue interference guaranteed by Articles 1 and 10 of Part I of the Constitution of Massachusetts and by the Fourteenth Amendment to the Constitution of the United States?

"3. Would said bill if enacted constitute a valid exercise of the power given to the General Court by Part II, c. 1, sec. 1, Art. 4, of the Constitution of Massachusetts to make wholesome and reasonable laws for the general welfare of the Commonwealth?

"4. Would said bill if enacted be repugnant to Article I, Part 1, of the Constitution of Massachusetts and to the equal protection clause of the Fourteenth Amendment to the Constitution of the United States?

"5. Would the prohibitions of said bill if enacted be so overbroad as to be repugnant to the due process clause of the Fourteenth Amendment to the Constitution of the United States?"

The questions asked are broad in scope and appear to be directed toward general constitutional rights rather than

the specific provisions of the bill. They raise the same basic legal principles. Therefore, we deem it expedient and advisable to consider the questions together.

Although the title of the bill shows that the Legislature intended to protect the right of privacy of employees, the bill is all inclusive and goes far beyond its intent. Under its terms an employer could not operate a closed circuit television system or other monitoring device at any time in a manufacturing establishment or a factory, "without the express consent of the employees, and unless the employees have first been notified that such system or device is in operation." A monitoring system could not be used to apprehend anyone seeking to enter the premises without authority after business hours. The proposed bill sweeps too broadly and would, if enacted, be unconstitutional.

We answer Questions 1 and 3, "No."

We answer Questions 2, 4 and 5, "Yes."

> RAYMOND S. WILKINS.
> R. AMMI CUTTER.
> PAUL G. KIRK.
> PAUL C. REARDON.

We agree with the above answers submitted by the majority of our colleagues as well as with the views of Mr. Justice Spiegel which follow.

> JOHN V. SPALDING.
> ARTHUR E. WHITTEMORE.

I agree with the answers submitted by my colleagues. The importance and impact of legislation of this type is great. As far as I can ascertain there are no precedents to serve as guidelines. Therefore, I think it necessary to discuss the constitutional effect of this legislation on the rights of employees.

Undoubtedly every person has the "right" to carry on a business without undue interference. However, an employer

does not have an unrestricted right to do anything he pleases that would interfere with the constitutional rights of other individuals.

The subject of an individual's interest in and right to personal privacy has, in the last decade, become a matter of a somewhat extensive discussion by legal commentators. The case of *Griswold* v. *Connecticut,* 381 U. S. 479, 485, suggests that an undefined right of privacy is protected by the Constitution.[1] A strong impetus to protect the right of privacy is the fantastic degree to which modern devices enable undetected monitoring. See, e.g., Westin, Science, Privacy, and Freedom: Issues and Proposals for the 1970's, Part I, 66 Col. L. Rev. 1003, at 1004-1010. It is clear that such devices have made the excesses of Orwell's "1984" a technological possibility, and have prompted commentators, Legislatures and courts, desirous of avoiding that result, to turn their attention to safeguarding privacy.

The employer has a general right to film the manufacturing process in his plant, but not to film every movement his employee might make and to tape every word that he might utter. The proper approach is to search for a reasonable balance between the individual's right to privacy and competing claims. The relative importance of the competing claims, along with alternative methods for satisfying

---

[1] "We have had many controversies over . . . penumbral rights of 'privacy and repose.' See, e.g., *Breard* v. *Alexandria,* 341 U. S. 622, 626, 644; *Public Utilities Comm'n* v. *Pollak,* 343 U. S. 451; *Monroe* v. *Pape,* 365 U. S. 167; *Lanza* v. *New York,* 370 U. S. 139; *Frank* V. *Maryland,* 359 U. S. 360; *Skinner* v. *Oklahoma,* 316 U. S. 535, 541. These cases bear witness that the right of privacy which presses for recognition here is a legitimate one.

"The present case, then, concerns a relationship lying within the zone of privacy created by several fundamental constitutional guarantees. And it concerns a law which, in forbidding the *use* of contraceptives rather than regulating their manufacture or sale, seeks to achieve its goals by means having a maximum destructive impact upon that relationship. Such a law cannot stand in light of the familiar principle, so often applied by this Court, that a 'governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.' *NAACP* v. *Alabama,* 377 U. S. 288, 307."

those claims, are relevant considerations. See Ruebhausen and Brim, Privacy and Behavorial Research, 65 Col. L. Rev. 1184, at 1190, and Westin, Science, Privacy, and Freedom: Issues and Proposals for the 1970's, Part II, 66 Col. L. Rev. 1205. Knowledge on the part of the person observed that he is being observed may also be relevant. Westin, Part II, *supra,* at 1210-1211.

A somewhat analogous conflict between the employer's right to run his business and employee's right to privacy is resolved by statutes which prohibit the use of polygraph tests on present or prospective employees. See The Polygraph in Private Industry: Regulation or Elimination? 15 Buffalo L. Rev. 655, at 664-665; G. L. c. 149, § 19B.

I believe that the Legislature could enact a bill which by its provisions would protect an employee's private and personal deportment and yet preserve the rights of an employer so as to pass constitutional muster.[2] There is no need to decide whether a bill which applied only to a manufacturing establishment or a factory would violate the equal protection clause.

JACOB J. SPIEGEL.

---

[2] At least one court has held, where no such statute was in force, that an employer's photographing of an employee for the purpose of studies to increase efficiency of his operations and promote safety of employees did not violate employee's right of privacy. *Thomas* v. *General Elec. Co.* 207 F. Supp. 792 (W. D. Ky.).