123 N.J. Super. 589 (1973)
304 A.2d 213
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
COMMUNITY DISTRIBUTORS, INC. t/a DRUG FAIR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Monmouth County Court, Law Division.
Decided April 23, 1973.
*591 Mr. Donald J. Fay, Deputy Attorney General, for plaintiff (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. David H. Rothberg argued the cause for defendant (Messrs. Sachar, Bernstein & Rothberg, attorneys).
AIKINS, J.C.C.
Defendant, owner and operator of a drug store known as "Drug Fair," appeals from its conviction in the Freehold Township Municipal Court on November 9, 1972 of violations of N.J.S.A. 2A:170-90.1 in that defendant did influence, request or require three of its employees, as a condition of employment or continued employment, to take or submit to lie detector tests. The three employees, all of whom took the test at the request of the employer, were Harold Cohen, Isabelle Bayer and Matilda Nipps.
Harold Cohen was employed on April 27, 1971 and was asked at the time of hiring if he would take a lie detector test. After being told that he did not have to take the test, he signed a consent form and took the test on May 11, 1971. His employment was terminated seven months later for reasons unrelated to the polygraph test.
Isabelle Bayer was employed on October 19, 1971 and was asked when applying for the job if she would be willing to take a lie detector test, though also told she was not so obligated. She, too, consented to the test, signed a waiver form, and took the test on November 4, 1971. Her employment was terminated immediately upon conclusion of and as a direct consequence of the test, which revealed that she had previously been involved in a larceny.
Matilda Nipps had previously been employed by Drug Fair and was reemployed on September 22, 1971. Like Cohen *592 and Bayer, she was asked if she would take the test, signed a waiver form, and was told that she did not have to take the test. She took the polygraph test on October 5, 1971. Her employment was terminated a short time before December 25, 1971 because of an hours dispute which was unrelated to the test.
A fourth employee, Anna Battle, took the test at one time, but had refused to do so on other occasions. Her employment status was unaffected by her refusal.
Defendant first contends that the statute is unconstitutional in that it deprives defendant of the ability to protect its property and, incidental thereto, asserts that the right of privacy of the employee is overshadowed by the property rights of the employer. Defendant also claims exemption from the statute since it is in the business of dispensing narcotics and dangerous drugs, and lastly asserts that there was no violation of N.J.S.A. 2A:170-90.1 in that the lie detector tests were not given as a condition of employment and continued employment.
In approaching the problem it is in order to survey briefly the history of the statute, N.J.S.A. 2A:170-90.1 (L. 1966, c. 114), which provides as follows:
Any person who as an employer shall influence, request or require an employee to take or submit to a lie detector test as a condition of employment or continued employment is a disorderly person.
The statute was enacted on June 17, 1966 after four previously unsuccessful attempts at passing a similar law. Since enactment only one other bill has been introduced in the Legislature respecting lie detectors in private enterprise (Assembly Bill 1518 [1973]), and that bill proposes upgrading a violation of the statute from a disorderly persons offense to a misdemeanor.
On the issue of constitutionality defendant asserts a property right in the protection of its business, claiming such right to be superior to any personal privacy rights protected *593 by the statute, which it contends is unconstitutional on the grounds that it denies it protection of its property and violates "due process."
A strong presumption exists in favor of a statute's constitutionality. David v. Vesta Co., 45 N.J. 301, 315 (1965); Fried v. Kervick, 34 N.J. 68, 74 (1961); Levitt & Sons, Inc. v. Div. Against Discrimination, etc., 31 N.J. 514, 531 (1960); Jamouneau v. Harner, 16 N.J. 500, 515 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955). Along with this presumption of constitutionality goes a correspondingly heavy burden of proof and persuasion upon the party urging unconstitutionality of the statute. Levitt & Sons, Inc. v. Div. Against Discrimination, etc., supra, 31 N.J. at 531.
With respect to the right to privacy and the prohibition of invasions thereof, the United States Supreme Court has recognized the right to privacy as one which ought to be protected. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). See also Breard v. City of Alexandria, 341 U.S. 622, 626, 644, 71 S.Ct. 920, 95 L.Ed. 1233 (1951), reh. den. 342 U.S. 843, 72 S.Ct. 21, 96 L.Ed. 637 (1951). New Jersey courts have also held that there is a right to privacy and that "equity will intervene to protect" that right. McGovern v. Van Riper, 137 N.J. Eq. 24, 30 (Ch. 1945), aff'd in part 137 N.J. Eq. 548 (E. & A. 1945). See also, Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72 (Ch. Div. 1967). The New Jersey Legislature also gave credence to the right to privacy by prohibiting employer-given polygraph tests in the enactment of N.J.S.A. 2A:170-90.1.
Defendant contends, however, that its right to protect its business through the use of a lie detector supersedes any personal right to privacy that its employees may have. Thus, the court is confronted with competing interests, as was the United States Supreme Court in Breard v. City of Alexandria, supra, 341 U.S. at 644, 71 S.Ct. 920, wherein city *594 housewives succeeded in keeping the representatives of a $5,000,000 magazine subscription agency from soliciting on their premises pursuant to a city ordinance. Here the "competitors" are a large drug store chain with nine stores in New Jersey, and individual employees whose thoughts and past history the lie detector seeks to probe in an effort to screen "undesirable" employees.
The court is unimpressed with defendant's contention that the enactment of N.J.S.A. 2A:170-90.1 effectively deprives it of its property without due process of law. Defendant concedes that there are other, although perhaps more costly, ways of screening job applicants and employees. The statute in no way forecloses defendant or other employers from utilizing their remaining screening options. The constitutional right to privacy here involved is of controlling importance. The statute, therefore, is clearly constitutional and does not abridge any rights of due process.
With regard to defendant's claimed exemption, it should be noted that no exemptions are granted either in the statute in question or any other statute of New Jersey. Case law is quite explicit that "[t]he absence of such a provision leads [to a conclusion] that the Legislature intended no such exemption to exist." Parking Auth. of Trenton v. Trenton, 40 N.J. 251, 257 (1963). The attitude of the courts in this regard is aptly stated thusly:
The authority to classify and exempt is within the Legislature; it is not an administrative or judicial function. [Male v. Pompton Lakes Mun. Util. Auth., 105 N.J. Super. 348, 358 (Ch. Div. 1969)]
N.J.S.A. 2A:170-90.1 is to be distinguished from simliar statutes of other jurisdictions, such as Pennsylvania's, which explicitly exempts from the ban employer polygraph testing of "persons who dispense or have access to narcotics or dangerous drugs." Pa. Stat. Ann., Title 18, § 4666.1. This court therefore concludes that by failing to exempt any particular employee or group of employees from the purview of the statute, the Legislative intent to exclude no one is *595 manifest. The granting of exemptions is a matter for the Legislature, and the courts should not usurp that prerogative.
Defendant's remaining contention, that the tests were not given as a condition of employment or continued employment, necessitates a determination of legislative intent and the meaning of the statutory language employed.
In the absence of statutorily created definitions, words used in statutes are to be "read and construed with their context" and are to "be given their generally accepted meaning." N.J.S.A. 1:1-1; Jamouneau v. Harner, supra, 16 N.J. at 513. Emphasis must therefore be placed on some of the terms used in the statute, remembering that the choice of words by the Legislature evidences the purpose behind the statute.
The first word, "influence," is perhaps the broadest. It is defined in Webster's Third New International Dictionary (1971) as follows:
INFLUENCE refers to power exerted over others, often through high position, strength of intellect, force of character, or degree of accomplishment, sometimes exercised unconsciously and felt insensibly, sometimes consciously or calculatedly brought to bear * * *
The second term is "request," which is defined in Black's Law Dictionary (4th ed. rev. 1968) as "an asking * * *, the expression of a desire to some person for something to be granted or done." "To request" is defined in Webster's Third New International Dictionary as "to ask to do something."
The final term is "require." According to Webster's, to require is "to ask for authoritatively or imperatively."
Having determined the meaning of the three statutory terms, the question is: Did defendant influence, request, or require the three named parties to take a lie detector test?
Considering that some employees, particularly Anna Battle, refused to take such a test and remained employed, and that in all three cases the parties were asked if they would take a test either at the time of their application for *596 work or sometime subsequent thereto, it follows that defendant did not "require" the parties to take the test.
Whether defendant influenced or requested such tests is quite another matter. At the time Isabelle Bayer filed her employment application and was interviewed, she was asked by Anna Battle of the cosmetics department if she would be willing to take a lie detector test. There is no question that Mrs. Battle was acting as an agent of defendant, thereby making the statute applicable. Matilda Nipps, a returning employee, was asked to take the test two weeks after her reemployment. Harold Cohen was asked by the assistant manager at the time of his being hired if he would take the test. All three parties signed consent forms.
The facts are clear in each case. Each person was requested, i.e., asked, if he or she would take the test. The matter of consent waivers being signed by all parties is of no relevance. There would be no consent but for the request, and the actual request is the violation the statute proscribes. The defendant is therefore "an employer [who did] request * * * an employee to take or submit to a lie detector test." Since the three prohibited acts are set forth in the disjunctive, the court need not reach the element of influence, although influence certainly enters into the final determination of whether there has been a statutory violation.
It is important at this point to note that the New Jersey statute's omnibus provision, i.e., "influence, request or require," far exceeds the reaches of statutes such as those of Pennsylvania and California. Section 4666.1 of the Pennsylvania Penal Code makes it a crime only for "whoever requires" a polygraph test as a condition of employment or continued employment (emphasis supplied). The California Labor Code (c. 1881, § 432.2, Stats. 1963), states that "no employer shall demand or require" employees or prospective employees to submit to a lie detector test as a condition of employment or continued employment (emphasis supplied). Thus, the New Jersey law is distinguishable from the laws of these other states which prohibit an employer from mandating *597 the taking of the tests. New Jersey, in an effort to prohibit virtually all employer-administered polygraph tests, has enacted a very broad law, seeking to curb not only employer-mandated tests, but also those given at the "request" or "influence" of the employer.
The remaining issue to be considered is whether or not the defendant's acts of requesting employees to submit to lie detector tests was done as a "condition of employment or continued employment." Again, the court notes that the term "condition of employment" is not defined in the New Jersey statutes or case law. The court must therefore seek out the generally accepted meaning of the words or phrase and apply same to the context of the statute. "Condition" is defined by Webster's Third New International Dictionary as:
1a: Something established or agreed upon as a requisite to the doing or taking effect of something else. 2: Something that exists as an occasion of something else: a circumstance that is essential to the appearance or occurrence of something else. 3a: Something that limits or modifies the existence or character of something else: a restriction or qualification.
"Condition," then, "indicates a requisite action, circumstance, or quality on which rests the validity or effectiveness of an agreement, a plan, promise, attribution * * *." Webster's, supra.
Admittedly, defendant did not physically compel its employees to submit to lie detector tests. Nor did defendant orally threaten its employees with loss of their jobs if they did not submit to the tests. From a realistic viewpoint, however, defendant-employer stands in the supreme bargaining position and, should it please, may adopt a "take it or leave it" attitude toward prospective and present employees. It essentially contends, however, that by not orally commanding the test with employment as the lure it has successfully circumvented the prohibition of N.J.S.A. 2A:170-90.1.
*598 Compelling psychological factors nonetheless enter into a situation wherein someone who wants a job is asked if he will volunteer to take a lie detector test. The court does not envision, nor does the defendant suggest, that prospective or current employees would initiate the administering of a lie detector test. The requests and suggestions clearly come from the employer.
Another psychological factor was clearly recognized in the "continued employment" context of a labor arbitration case in which it was held that:
[T]he implicit social threat to an employee in the setting of a plant community were he to refuse to submit to lie detector testing where crimes have concededly been committed so compels consent that a guiltless but emotionally fearful employee has practically no choice but to consent to testing procedure * * * [B.F. Goodrich Tire Co., 36 Lab. Arb. 552, 558 (1961)]
It is eminently clear that, although defendant's prospective employees are only "requested" to submit to lie detector tests, they are in fact "influenced" to do so psychologically by being introduced to an establishment where many employees take the tests. The psychological compulsion to take the test is bolstered by the posting of names on the employee bulletin board of those employees who are scheduled to take the upcoming test. By merely "requesting" the employee to take the test, the employer is in fact offering the employee an ultimatum  either he takes the test or he puts his character in doubt among the management as well as his fellow workers.
The conclusion is inescapable that the actions of defendant in requesting and administering lie detector tests to its employees is the very type of activity that the Legislature proscribed in N.J.S.A. 2A:170-90.1. Any amendments or exemptions deemed necessary are strictly the subject matter of further legislative enactment.
The convictions below are affirmed, and the fines of $100 plus $10 costs on each are reimposed.