64 N.J. 479 (1974)
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
COMMUNITY DISTRIBUTORS, INC., DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued December 3, 1973.
Decided April 3, 1974.
*481 Mr. David H. Rothberg argued the cause for the appellant (Messrs. Sachar, Bernstein & Rothberg, attorneys).
Mr. Philip A. Kahn, Deputy Attorney General, argued the cause for the respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by JACOBS, J.
The Monmouth County Court, in an opinion reported at 123 N.J. Super. 589 (1973), upheld the defendant's conviction of violations of N.J.S.A. 2A:170-90.1. The defendant appealed to the Appellate Division and we certified before argument there. R. 2:12.
The defendant Community Distributors, Inc., trading as Drug Fair, operates a chain of drugstores in New Jersey. In the course of its business operations it requested that various employees including Harold Cohen, Isabelle Bayer and Matilda Nipps take or submit to polygraph (lie detector) tests. Harold Cohen was employed by the defendant in April 1971 and took the test shortly thereafter. His employment was terminated in December without apparent reason and there was no evidence to relate the termination to the results of the test. Isabelle Bayer was employed in October 1971 and took the test during the following month. Her employment was terminated immediately upon conclusion of the test and on the basis of its results. Matilda Nipps was reemployed in September and took the test in October 1971. Her employment was terminated in December for reasons unrelated to the test. Each of the named employees signed a form captioned "Consent To Taking A `Lie Detector' Test"; it stated that "Drug Fair has not influenced, requested, or required me to take this lie detector test as a condition of employment or continued employment." However, the defendant entered into a stipulation of facts in the County Court which explicitly acknowledged that "all tests were given at the request of the employer."
*482 The defendant was charged in the Freehold Township Municipal Court with violations of N.J.S.A. 2A:170-90.1 which declares that "Any person who as an employer shall influence, request or require an employee to take or submit to a lie detector test as a condition of employment or continued employment, is a disorderly person." L. 1966, c. 114, effective June 17, 1966. After conviction, the defendant appealed to the Monmouth County Court where it contended that (1) the statute is unconstitutional in that "it deprives defendant of the ability to protect its property" and thereby violates "due process"; (2) the defendant should be exempt from the statute "since it is in the business of dispensing narcotics and dangerous drugs"; and (3) the defendant did not violate the statute since "the lie detector tests were not given as a condition of employment and continued employment." 123 N.J. Super. at 592-593. Each of these contentions was rejected by the County Court which adjudged "on trial de novo" that the defendant was guilty as charged. Before us the defendant has renewed its contentions that the statute is "unconstitutional as applied" and that, in any event, the defendant did not violate the statute "in that it did not give the lie detector tests as a condition of employment."
The polygraph is a device that measures and records involuntary body responses to stress. These may include changes in blood pressure, pulse and respiration as well as skin responses. Their interpretation may lead the examiner to conclude that the subject's answers were truthful, untruthful or inconclusive. While there may be differing views as to the current state and reliability of the art, no one seems to question that for the test to be at all acceptable it must be conducted under carefully controlled circumstances and the examiner must be a person sufficiently trained and skilled in the interpretation of the test results. See Reid and Inbau, Truth and Deception: The Polygraph ("Lie Detector") Technique (1966); United States v. De Betham, 348 F. *483 Supp. 1377 (S.D. Cal. 1972), aff'd, 470 F.2d 1367 (9 Cir.), cert. denied, 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973); United States v. Ridling, 350 F. Supp. 90 (E. D. Mich. 1972); cf. State v. Arnwine, 67 N.J. Super. 483 (App. Div. 1961); Skolnick, "Scientific Theory and Scientific Evidence: An Analysis of Lie-Detection," 70 Yale L.J. 694 (1961).
Much of the current polygraph controversy, national as well as local, centers around evidential issues in criminal proceedings. See Note, "The Emergence of the Polygraph at Trial," 73 Colum. L. Rev. 1120 (1973); "Recent Developments  United States v. Ridling: The Polygraph Breaks the `Twilight Zone,'" 23 Catholic U.L. Rev. 101 (1973). In our own State we have had many decisions which have declined to receive the results of polygraph tests in criminal proceedings even though it convincingly appeared that the tests had been taken voluntarily. In State v. Royster, 57 N.J. 472, 485, cert. denied, 404 U.S. 910, 92 S.Ct. 235, 30 L.Ed.2d 182 (1971), we noted that "[t]he results of polygraph tests are still judicially viewed as unreliable and therefore inadmissible in evidence." See State v. Driver, 38 N.J. 255, 261 (1962); State v. Cary, 49 N.J. 343, 351 (1967), s.c., 53 N.J. 256 (1969), s.c., 56 N.J. 16 (1970); State v. Kavanaugh, et al., 52 N.J. 7, 15 n. 2, cert. denied, sub nom., Matzner v. New Jersey, 393 U.S. 924, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968). More recently in State v. McDavitt, 62 N.J. 36 (1972), we did sustain the admission by consent of the results of a polygraph test though we took pains to caution that the stipulation of consent must be "freely entered into" and the examiner must be "qualified and the test administered in accordance with established polygraph techniques." 62 N.J. at 46. In 1973 a "Report Of The New Jersey Supreme Court's Committee On Criminal Procedure On Polygraph Tests" was submitted to us and was considered at a Judicial Conference. A majority of the Committee suggested that even if the reliability of polygraph test results is accepted there may be policy considerations dictating their *484 exclusion from criminal proceedings except where stipulated as in McDavitt, supra, 62 N.J. 36.
We are not now called upon to pursue the issue insofar as it relates to criminal proceedings for here we are concerned strictly with an employer-employee context rather than a criminal context. There is no judicial control when an employer subjects his employee to a lie detector test and there is no licensing or other objective method of assuring expertise and safeguard in the administration of the test and the interpretation of its results. Nor is there any assurance of true voluntariness for the economic compulsions are generally such that the employee has no realistic choice. Organized labor groups have often expressed intense hostility to employer requirements that employees submit to polygraph tests which they view as improper invasions of their deeply felt rights to personal privacy and to remain free from involuntary self-incrimination. See United States v. De Betham, supra, 348 F. Supp. at 1390; The `Lie Detector', Guilty Until `Proven' Innocent (Published by AFL-CIO Maritime Trades Department Feb. 12, 1970); cf. Hermann, "Privacy, The Prospective Employee, and Employment Testing: The Need to Restrict Polygraph and Personality Testing," 47 Wash L. Rev. 73, 126 (1971); Falick, "The Lie Detector and the Right to Privacy," 40 N.Y. State Bar J. 102, 103 (1968); Comment, "The Polygraph in Private Industry: Regulation or Elimination?" 15 Buffalo L. Rev. 655, 663-64 (1966); Note, "Lie Detectors in Private Employment: A Proposal for Balancing Interests," 33 Geo. Wash. L. Rev. 932, 937 (1965).
Many industrial contracts have embodied clauses against polygraph tests and many states have legislatively prohibited their industrial use. To date at least fourteen states have such legislation. See Alaska Stat. § 23.10.037; Labor Code of California, § 432.2; Conn. Gen. Stat. Ann. § 31-51g; Del. Code Ann. tit. 19, § 705; Hawaii Rev. Stat. §§ 378-21, 378-22; Idaho Code §§ 44-903, 44-904; Md. Ann. Code Art. 100, § 95; Mass. Gen. Laws Ann. c. 149, § 19B; Minn. Stat. *485 Ann. § 181.75; N.J.S.A. 2A:170-90.1; Ore. Rev. Stat. §§ 659.225, 659.990(7); Pa. Stat. Ann. tit. 18, § 4666.1; R.I. Gen. Laws Ann. §§ 28-6.1-1, 28-6.1-2; Wash. Rev. Code Ann. §§ 49.44.120-49.44.130.
Some of the cited statutes contain exemptions; New Jersey's statute does not. See Engel v. Tp. of Woodbridge, 124 N.J. Super. 307, 310 (App. Div. 1973). Some of the statutes are restricted in terminology to situations where employers "require" polygraph tests as a condition of employment or continued employment; New Jersey's statute is not for it is sweepingly aimed at employers who "influence, request or require" the taking of a lie detector test as a condition of employment or continued employment. See 123 N.J. Super. at 596. We readily reject, as did the County Court (123 N.J. Super. at 597-598), the defendant's contention that its request was not a condition of employment or continued employment within the statutory contemplation. Surely the employee would understand that it was despite any formal assertion by the employer to the contrary and his understanding would be wholly realistic in view of the employment relationship. The legislative goal would obviously be frustrated if Drug Fair's procedure were now judicially declared to be outside the prohibitory orbit. In the light of the "breadth of the objectives of the legislation and the commonsense of the situation" (J.C. Chap. Prop. Owner's &c., Assn. v. City Council, 55 N.J. 86, 100 (1969)) there can be little doubt that the conduct of the defendant here was violative of the statute.
We come now to the defendant's contention that N.J.S.A. 2A:170-90.1 deprives it of its property without due process of law (123 N.J. Super. at 594). The defendant is unable to cite any judicial opinion or academic writing upholding a constitutional attack on a statute prohibiting polygraph tests in the employer-employee context. It does not refer to the Opinion of The Justices in 356 Mass. 756, 250 N.E.2d 448 (1969) but, in any event, that lends it no support for there the court simply expressed the view that *486 a statute which would prohibit an employer from using "a monitoring system" even after business hours would sweep too broadly and would therefore be unconstitutional. In a concurring opinion Justice Spiegel suggested that the proper approach was to search for "a reasonable balance between the individual's right to privacy and competing claims" and he noted without intimation of any disapproval that the "somewhat analogous conflict between the employer's right to run his business and an employee's right to privacy is resolved by statutes which prohibit the use of polygraph tests on present or prospective employees." 250 N.E.2d at 450.
The defendant stresses that it deals with narcotics, that it has been subjected to considerable losses from theft, and that its use of the polygraph was designed to reduce its losses and protect its property. The statute of course does not prevent it from taking necessary steps towards reducing its losses and protecting its property except that it may not use the polygraph. The exception may result in increased cost to it but in that regard it is not to be differentiated from the many costly regulatory business restrictions placed on the defendant including those in the field of industrial relations. Some of the restrictions have been imposed by the Federal Government whereas others have been imposed by the State Government in the exercise of its constitutional police power. As we pointed out in Burton et al. v. Sills, 53 N.J. 86, 102 (1968), appeal dismissed, 394 U.S. 812, 89 S.Ct. 1486, 22 L. Ed 2d 748 (1969), that power "is admittedly a comprehensive one and may be invoked by the Legislature whenever it deems it necessary for the protection of the public health, safety, morals or general welfare." 53 N.J. at 102. See Fried v. Kervick, 34 N.J. 68 (1961); Reingold v. Harper, 6 N.J. 182 (1951); cf. State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 519 (E. & A. 1935).
In David v. Vesta Co., 45 N.J. 301 (1965), Justice Proctor pointed out that private property rights are "not absolute"; that they are always subject to "the reasonable exercise *487 of the police power"; and that in the exercise of its police power the State "has placed myriad restrictions" thereon. 45 N.J. at 311; see State v. Shack, 58 N.J. 297, 305 (1971). When the Legislature considered the bill which ultimately became L. 1966, c. 114 (N.J.S.A. 2A:170-90.1) it was aware that by prohibiting the polygraph it would eliminate one of the measures used by employers to protect their property and business interests. But it was also aware that the use of the polygraph involved matters of evidential reliability and industrial conflict. See 38 Cal. State B.J. 734 (1963): "The use of lie detectors by personnel departments, however, creates suspense and distrust between employers and employees. Moreover, lie detectors are not entirely accurate and use by inexperienced persons may result in false findings."
In addition, the Legislature was aware of the intensity of organized labor's view that the use of polygraphs in the industrial field represents uncalled for if not unconstitutional breaches of the employees' rights to personal privacy and to remain free from involuntary self-incrimination. See Hermann, supra, 47 Wash. L. Rev. at 126 et seq.; cf. Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct. 1678, 14 L.Ed.2d 510, 514-515 (1965); Breard v. City of Alexandria, 341 U.S. 622, 626, 644, 71 S.Ct. 920, 95 L.Ed. 1233, 1239, 1249, rehearing denied, 342 U.S. 843, 72 S.Ct. 21, 96 L.Ed. 637 (1951). The Legislature could reasonably conclude that on balance the public welfare would be furthered by prohibiting the employer from using the lie detector test as a condition of employment or continued employment. It could also reasonably conclude not to provide for exemptions though some of the out-of-state statutes do so provide. In the light of further experiences and developments in the art, the Legislature may ultimately specify exemptions (cf. 123 N.J. Super. at 594, 598; Engel v. Tp. of Woodbridge, supra, 124 N.J. Super. 307) or may take other courses, but that is not our judicial concern. In the present context our *488 approach must be faithful to the following principles recently restated by us in Burton, et al. v. Sills, supra:
We do not sit here as a superlegislature and we accept the legislative judgment as to the wisdom of the statute. See New Jersey Chapter, American Institute of Planners v. New Jersey State Board of Professional Planners, 48 N.J. 581, 609 (1967), appeal dismissed, 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967). Similarly we honor the presumption of constitutionality which attends all legislation (see Hudson County News Co. v. Sills, 41 N.J. 220, 227 (1963), appeal dismissed, 378 U.S. 583, 84 S.Ct. 1914, 12 L.Ed.2d 1036 (1964); Fried v. Kervick, 34 N.J. 68, 74 (1961)) and the doctrine that factual support for the legislative judgment will be presumed and, absent a sufficient showing to the contrary, it will be assumed that the statute rested "upon some rational basis within the knowledge and experience of the Legislature." Reingold v. Harper, 6 N.J. 182, 196 (1951); United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234, 1241 (1938). 53 N.J. at 95.
See The Independent Electricians and Electrical Contractors' Association of the State of New Jersey v. New Jersey Board of Examiners of Electrical Contractors, 48 N.J. 413, 423-424 (1967).
In North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc., 414 U.S. 156, 94 S.Ct. 407, 413, 38 L.Ed.2d 379 (1973), the Supreme Court rejected a constitutional attack on a state statute which required that an applicant for a permit to operate a pharmacy be a registered pharmacist or a corporation whose majority stockholders are registered pharmacists. In the course of his opinion for the entire Court, Justice Douglas took occasion to reiterate that the due process clause of the Federal Constitution should not be construed to straitjacket state legislatures "when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare." Lincoln Fed. L.U. v. Northwestern I. & M. Co., 335 U.S. 525, 536, 69 S.Ct. 251, 93 L.Ed. 212, 221 (1949). Our Legislature views polygraph tests in the industrial context as offensive to the public welfare and has implemented its views by enacting L. 1966, c. 114 (N.J.S.A. 2A:170-90.1). Nothing in the enactment infringes on Federal due process *489 as recently dealt with in the Snyder's Drug Stores case and since there has been no showing of unreasonableness in the exercise of the State's police power the enactment satisfies State due process. We find no merit in any of the points raised by the defendant and, accordingly, the judgment of conviction entered against it is:
Affirmed.
For affirmance  Acting Chief Justice JACOBS, Justices HALL, SULLIVAN, PASHMAN and CLIFFORD and Judges CONFORD and COLLESTER  7.
For reversal  None.