154 N.J. Super. 213 (1976)
381 A.2d 77
THE UNION COUNTY PARK COMMISSION, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THE COUNTY OF UNION, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT,
v.
THE COUNTY OF HUDSON, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT-INTERVENOR.
Superior Court of New Jersey, Law Division.
Decided May 7, 1976.
*217 Mr. Kenneth L. Estabrook, counsel to the Union County Park Commission, for plaintiff (Messrs. Lindabury, McCormick & Estabrook, attorneys; Mr. Richard R. Width on the brief).
Mr. William J. McCloud, Union County Counsel, for defendant (Mr. William J. McCloud on the brief).
Mr. Harold J. Ruvoldt, Jr., Hudson County Counsel, for defendant-intervenor.
FELLER, J.S.C., Retired, Temporarily Assigned on Recall.
This is an action in lieu of prerogative writs. Plaintiff moves for summary judgment and defendant has filed a cross-motion for summary judgment. Defendant intervenor, by court order dated April 8, 1976, was granted leave to intervene against count 3 and count 4 of the original complaint. However, count 4 was, with the approval of the court, withdrawn by plaintiff, and defendant intervenor's cross-motion for summary judgment is directed against count 3.
*218 This action was originally instituted in the Chancery Division of the Superior Court but was transferred to the Law Division by order of Judge Harold A. Ackerman on or about March 26, 1976.
This controversy presents for decision an issue which may be without precedent in this State. The case deals with the power of the newly accepted county manager form of government in Union County, approved by the voters of the county in November 1974 pursuant to the Optional County Charter Law, L. 1972, c. 154; N.J.S.A. 40:41A-1 et seq. Specifically, the issue to be decided is whether the County of Union has the power under the law to abolish the present structure of the Union County Park Commission (Park Commission), plaintiff herein.
Plaintiff contends that the Park Commission was created as a result of a public referendum by the voters of Union County in 1921. Since that time it has existed as a separate body politic of the State of New Jersey, dedicated to acquiring and maintaining parks and recreational facilities for the residents of Union County and the general public.
The Park Commission has developed and currently administers 27 parks, consisting of over 5,509 acres. These parks provide a wide variety of conservation and recreational facilities and are located within the geographical boundaries of Union, Somerset and Middlesex Counties. They are operated on an annual budget of approximately $5,350,766, exclusive of capital funds. About one-third of these funds are derived from revenue-producing facilities operated by the Park Commission, with most of the balance being obtained from the County of Union.
At the present time the Park Commission employs over 200 permanent employees and close to 300 seasonal employees. 42 permanent employees are members of the Union County Park Police and are responsible for law enforcement within the 5,509 acres of park land.
*219 Plaintiff further contends that the County of Union is also a body politic of the State of New Jersey. See N.J.S.A. 40:18-1 et seq. and statutes cited or referenced therein.
Following the enactment of chapter 154 of the Laws of 1972 (commonly known as the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq.), a Charter Study Commission was established to study the governmental structure of Union County. The Study Commission thereafter issued a final report which recommended that the voters of Union County adopt the county manager form of county government, as set forth in Article 4 of the Optional County Charter Law. After this final report was submitted, the Union County Clerk caused a referendum question, framed to conform with the Commission's recommendation, to be placed on the ballot for submission to the voters at the general election held in November 1974. At that election the voters of the county approved the Commission recommendation and adopted the county manager form of government for the county.
Under the terms of the Optional County Charter Law and pursuant to the new charter, the Union County Board of Chosen Freeholders must adopt an administrative code organizing the administration of county government and setting forth the duties, responsibilities, powers and performance required of all county officials and agencies on or before 12 noon on May 1, 1976. This administrative code became effective at noon on May 1, 1976.
The administrative code purports to terminate and/or affect the status of the Union County Park Commission under the Park Act, and absorb certain of its functions into the government of the county. Plaintiff argues, in effect, that the Park Commission is legislatively mandated to operate as an autonomous body, N.J.S.A. 40:37-96 through 174, and is not affected by the referendum adopting the county manager form of government. As a result of this threatened action, the Park Commission has instituted this proceeding and seeks a declaratory judgment.
*220 Defendant Union County contends that this action has been instituted by the Park Commission for the purpose of preventing the county from acting under the terms of N.J.S.A. 40:41A-1 et seq. (Optional County Charter Law) in changing the presently existing autonomous nature of that Commission and bringing its functions under the general operations of county government. Defendant further contends that relief is sought by plaintiff in seeking a declaratory judgment setting aside the Optional County Charter Law as unconstitutional and void as it affects the Park Commission, and further, by seeking a declaratory judgment that any proposed new administrative code of the county which changes the present status of the Park Commission be declared void.
Defendant contends that after the adoption by referendum Union County proceeded to reorganize its freeholder board on November 10, 1975, at which time a county manager was selected and the period of transition began, the main purpose of which was to provide the time necessary to prepare, introduce and adopt an administrative code pursuant to N.J.S.A. 40:41A-125 on or before May 1, 1976. The administrative code, as adopted, sets forth the organization of county government in detail, as well as the functions and duties of all county agencies and officials. The complaint filed herein alleges, quite correctly, that the contemplated code will end the autonomous nature of the Park Commission, bringing that body under the functional jurisdiction and control of the county.
The statute, N.J.S.A. 40:37-96 et seq., confers upon the Park Commission the status of a body politic, with powers to sue and be sued, the right to use a seal and the right to adopt by-laws to govern the conduct of its business. The commissioners, five in number, are appointed for five-year terms by the board of chosen freeholders with the duty to acquire, maintain, and make publicly available parks and spaces for use by the citizenry. N.J.S.A. 40:37-101. The Commission has, *221 over the course of its years in existence and operation, acquired and supervised various park and recreational sites and activities, so that today it has hundreds of employees, including police, and thousands of acres of land.
Hudson County, defendant-intervenor, admits most of the facts set out above and denies plaintiff's contention that if the Union County charter is construed to affect the status of the Park Commission, then that part of the charter is unconstitutional and void. All parties are seeking declaratory judgment. Thus it is evident from a review of the above contentions that there are no genuine issues of material facts involved.

I
Plaintiff sets out in its argument that the Optional County Charter Law was not intended to have any effect on the status of the Park Commission operating under the Park Act.
N.J.S.A. 40:41A-30 outlines the general powers granted to new forms of county government under the law. It reads in part
The grant of powers under the act is intended to be as broad as is consistent with the Constitution of New Jersey and with general law relating to local government. The grant of powers shall be construed as liberally as possible in regard to the county's right to reorganize its own form of government, to reorganize its structure and to alter or abolish its agencies, subject to the general mandate of performing services, whether they be performed by the agency previously established or by a new agency or another department of county government. [Emphasis supplied]
N.J.S.A. 40:41A-26 provides that nothing in the act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by state statute, providing that such abolition or consolidation shall not alter the obligation of the county to continue providing the services previously provided *222 by such abolished or consolidated agency. The statute then provides as follows:
The intent of this act is to enable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by Legislature to be performed in the most efficient and expeditious manner and absent a clear legislative declaration to the contrary without regard to organizational, structural or personnel provisions contained in the legislation mandating such duty. [Emphasis supplied]
Thus, the statute states that the grant of powers shall be construed as liberally as possible, and one of the powers given to the county government is to abolish or consolidate agencies without regard to organizational, structural or personnel provisions contained in the legislation mandating the duties to be performed, absent a clear legislative declaration to the contrary.
The Union County Park Commission was organized and exists under the provisions of L. 1895, c. 91, as amended from time to time. This legislation is found in N.J.S.A. 40:37-96 through 174 and will hereafter be referred to as the Park Act. The Park Act provides that it "shall apply to counties having a population of more than two hundred thousand inhabitants, but shall remain inoperative in any such county until submitted to and approved by the voters thereof." The voters of Union County, by referendum in 1921, by a majority vote created the Union County Park Commission. In other words, the voters adopted the provisions of the Park Act of 1895. Since that time the Park Commission has existed as a separate and autonomous body politic dedicated to acquiring and maintaining parks and recreational facilities for the residents of Union County and the general public.
The Optional County Charter Law was adopted in 1972 and went into effect on September 20, 1972. One of the plans in this law was the county manager form of government, which was adopted by the voters of Union County by referendum on Election Day 1974. In other words, *223 the voters adopted the provisions of N.J.S.A. 40:41A-24 et seq. and 40:41A-45 et seq. (the Optional Charter Law with reference to the county manager form of government).
Although repeals by implication are not favored, Brewer v. Porch, 53 N.J. 167, 173 (1969); Loboda v. Clark, 40 N.J. 424 (1963), and in the absence of an express repealer the legislative intent to effect such a repeal must be clear, Labor & Industry Dept. v. Cruz Constr. Co., 45 N.J. 372, 380 (1965), when a subsequent legislative enactment clearly conflicts with an earlier statute affecting the same subject matter, the courts will find a legislative intent to supersede the earlier law. Montclair v. Stanoyevich, 6 N.J. 479 (1951). The search is for legislative intent, Gangemi v. Berry, 25 N.J. 1 (1957), and in seeking to discover legislative intent it is presumed that the Legislature is aware of all its prior enactments. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291 (1968). Thus, the Legislature must have been aware that N.J.S.A. 40:37-96 et seq., enacted in 1895, was on the statute books when it enacted N.J.S.A. 40:41A-24 et seq. in 1972. The new law is to be read in the light of the old law and the evils to be remedied. Key Agency v. Continental Casualty Co., 31 N.J. 98 (1959).
The clause in N.J.S.A. 40:41A-26, "absent a clear legislative declaration to the contrary," may be construed as consisting of two imperfect impressions, one favoring plaintiff and the other favoring defendant. However, our courts have uniformly held in construing a statute with two imperfect expressions that the court should select that view which accords with probable legislative intent. Roman v. Sharper, 53 N.J. 338 (1969). Of course, in statutory construction the legislative intent may be inferred from language used or on grounds of policy or reasonableness. Harvey v. Essex Freeholders Bd., 30 N.J. 381 (1959).
In construing this statute for the first time we should seek out the legislative intent and to that end we should consider any history which may be of aid. State v. Madden, 61 N.J. 377, 389 (1972). To this end resort must be had *224 to the history and purpose of the law. State v. Brown, 22 N.J. 405 (1956). If new laws drastically change the old ones, this might be an indication of legislative intent. N.J. State P.B.A. v. Morristown, 65 N.J. 160, 165 (1974); Mahr v. State, 12 N.J. Super. 253, 261 (Ch. Div. 1951).
The Optional County Charter Law was adopted by the Legislature in response to the findings and reports of the County and Municipal Government Study Commission created pursuant to L. 1966, c. 28. The Commission was charged with the responsibility of inquiring into the structure and function of county and municipal governments for the purpose of possible streamlining them. The Commission published its findings in the report, "County Government Challenge and Change (1969)." On page XIX the Commission lists its general recommendations, one of which is to
Reorganize themselves [counties] as they see fit under general law including the right to consolidate agencies, boards and commissions.
The Commission further states:
If the county is to play a wider role in local government it must be given adequate legal authority. Specifically, we see the need for legal powers in the following areas: (1) internal reorganization  with power not only to reorganize or consolidate departments but to centralize functions now performed by autonomous boards, agencies and commissions where desirable.
See American Federation of State, etc., Employees A.F.L.C.I.O., v. Hudson Welfare Bd., 141 N.J. Super. 25 (Ch. Div. 1976).
It would appear that a review of the history of the law indicates that the clearly expressed intent of the Legislature and the meaning of the law is to give the new county governments created under the law the power and authority to restructure their form as they see fit, consistent with the New Jersey Constitution and general law. The obligations of the counties as directed by state statutes are not altered in any way. Mandated services must continue. How they are *225 to be administered is to be decided by the elected county officials. However, if there is a "clear legislative declaration to the contrary," the county is not free to abolish a structure directed by the Legislature.
A close reading of N.J.S.A. 40:41A-26 leads to the conclusion that a "clear legislative declaration to the contrary" is not synonymous with a mandated body. Although in prior legislation the Legislature directed that a particular entity shall be created by certain counties, such mandate in itself would not preclude counties under the law from abolishing the entity.
What is meant by a "clear legislative declaration to the contrary" is itself unclear, particularly when such statutes as deal with the judicial system, welfare, taxation, elections, etc., all have a certain clarity of legislative declaration that there shall be a board, or there shall be a court, or there shall be a particular office to perform the particular state function. The only reasonable interpretation is that a legislative provision in another statute would not amount to a "clear legislative declaration" in this context unless it expressly precluded the exercise of the legislative powers of the board of chosen freeholders under the new charter.
This interpretation is confirmed by the legislative history. As part of that history the County and Municipal Government Study Commission published and distributed a commentary on the Optional County Charter Law in bill form. It states: * * * "except that the Legislature can specifically forbid the county from consolidating or abolishing any particular unit heretofore existing or it may in legislation passed hereafter specify that the county shall perform a task through a particular agency."
In Trenton Parking Auth. v. Trenton, 40 N.J. 251 (1963), the Authority contended that as a political subdivision of the State and as an agency and instrumentality of the city, it was exempt from paying the municipal permit fee. The court, finding no express or implied provision in the Parking Authority Law (N.J.S.A. 40:11A-1 et *226 seq.) exempting a parking authority from the city's building code requirements, stated that if the Legislature had intended to exempt an authority from municipal building regulations requiring a payment of a fee for a building permit, a provision to that effect could readily have been included in the law. The absence of such a provision leads to the conclusion that the Legislature intended no such exemption to exist. The same view was expressed in Wall v. Hudson Park Comm'n, 80 N.J. Super. 372 (App. Div. 1963), where the question arose as to whether a county park commission was exempt from liability for personal injuries resulting from the use of public grounds for the reason that it was an agency of the county which was exempt. The court held that the exemption afforded by the statute did not extend to the activities of the county park commission. Had the Legislature intended such an exemption it would have clearly so stated.
The Union County Park Commission claims to be exempted from the operation of the Optional County Charter Law (N.J.S.A. 40:41A-1 et seq.). No such exemption is granted in that law. As stated supra, case law is quite explicit that absent express provisions, no exemption was intended.
The authority to classify and exempt is with the Legislature; it is not an administrative or judicial function. Male v. Pompton Lakes, 105 N.J. Super. 348, 358 (Ch. Div. 1969). To extend an exemption beyond those plainly and unmistakably included within its terms is to abuse the interpretative process and to frustrate the announced will of the people. A.H. Phillips Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). In State v. Community Distributors, 123 N.J. Super. 589 (Law Div. 1973), the court held that failure to exempt from the purview of a statute manifests the legislative intent not to exempt, and where the Legislature has not granted an exception to the scope of the statute, the judiciary cannot supply one. Bergen Cty. v. Hackensack Meadowlands Develop. Comm'n, 129 N.J. Super. 519-523 (Law Div. 1974). The purpose *227 of the Law (N.J.S.A. 40:41A-1 et seq.) encompasses all county bodies and functions not specifically excepted. The Park Commission is not so excepted and is subject to the Law.
Thus it is evident that a "clear legislative declaration to the contrary" means that such declaration should have been specifically spelled out in the Law.

II
Plaintiff contends that the Optional County Charter Law did not repeal the Park Act and must be construed in harmony with it. As stated supra, the Union County Park Commission exists and exercises its rights and responsibilities as a result of a referendum mandated by the Park Act, N.J.S.A. 40:37-119 through 172. The Optional County Charter Law, also adopted by referendum, does not contain any specific provision which expressly repeals the Park Act or any part thereof.
The New Jersey Constitution provides that laws concerning municipalities and counties shall be liberally construed in their favor. N.J. Const. (1947), Art. IV, § VII, par. 11. The intention of this provision was to reverse earlier judicial decisions that grants of power to political subdivisions be construed narrowly.
N.J.S.A. 40:41A-27, entitled "County powers generally," provides as follows:
Any county that has adopted a charter pursuant to this act may, subject to the provisions of such charter, general law and the State Constitution:
(a) Organize and regulate its internal affairs; create, alter and abolish offices, positions and employments and define functions, powers and duties thereof; establish qualifications for persons holding offices, positions and employments; and provide for the manner of their appointment and removal for their term, tenure and compensation.
(b) Adopt, amend, enforce and repeal ordinances and resolutions as defined in sections 100, 101, notwithstanding the effect of any referendum conducted prior to the county's adoption of its charter pursuant to the act. [Emphasis supplied]
*228 An interpretation of the above leads to the conclusion that in reorganizing the county government under the provision of the Charter Law, the county may by ordinance adopt an administrative code notwithstanding the effect of any referendum conducted prior to the county's adoption of its charter pursuant to that act.
Thus, under the liberal construction of the statute affecting counties, mandated by the Constitution, section (b) supra has the effect of superseding part of the Park Act adopted by the referendum in 1921. It thus affects Union County in the event that an ordinance is enacted the terms of which are inconsistent with the terms of that part of the Park Act.
The right to referendum in New Jersey is solely a statutory right. It is not a constitutional right. Smith v. Livingston Tp., 106 N.J. Super. 444 (Ch. Div. 1969), aff'd 54 N.J. 525 (1969). In the present case the Legislature saw fit to adopt the Park Act and extended the right of adoption by a referendum to counties achieving a certain population. However, the Legislature did not surrender its right to alter or abolish that prior action. The adoption of N.J.S.A. 40:41A-1 et seq. was merely a later legislative pronouncement on the subject. This time the Legislature conferred upon the people of Union County the right to a referendum effecting a reorganization of the county government. Again, these were privileges conferred by the Legislature, not rights vested in the people by the Constitution.
In Epstein v. Long, 133 N.J. Super. 590 (Law Div. 1975), the court discussed the referendum question in considering the validity of L. 1974, c. 141, as follows:
* * * In New Jersey unlike Missouri and Colorado the right of initiative and referendum does not exist as a recognized limitation upon the legislative power. N.J. Const. (1947) Art. IV, § 1, par. 1 states "The Legislative power shall be vested in a Senate and General Assembly." The word "referendum" does not appear in the Constitution, nor is it alluded to.
The Legislature, in establishing the Optional County Charter Law (N.J.S.A. 40:41A-1 et seq.), extended to the people of each *229 county the privilege of electing a charter commission to study the governmental structure of their own county and then voting on the commission's recommendation, if any, of one of the governmental plans which the Legislature had devised. * * * [at 602]
Thus, the county may by ordinance adopt an administrative code pursuant to the terms of the Optional County Charter Law notwithstanding the effect of the referendum of 1921 which resulted in the adoption of the Park Act. Again, in Epstein v. Long, supra at 603, the court stated that the referendum here was enacted statutorily, and the plans which are the subject matter of the referendum can be amended by statute. Smith v. Livingston Tp., supra.
Plaintiff cites Loboda v. Clark Tp., 74 N.J. Super. 159, 173, 174 (Law Div. 1962), in which the court held that a referendum adopted by the electors can be repealed only by a vote of the electorate in the same manner in which it was adopted. The decision of the court was affirmed by the Supreme Court in 40 N.J. 424 (1963). However, the court in its opinion did not consider this question of repeal by referendum, nor did it rule upon the same. Consequently, in view of the opinion of the court in Epstein, supra, it is questionable whether the above statement of the Law is applicable.

III
This court agrees with plaintiff's contention that the final report of the Union County Charter Study Commission contains no notice of a specific intention to alter the status of the Union County Park Commission.
The final report does not even mention the Union County Park Commission. A further reading of the final report includes a reference to agencies, and not to boards or commissions. The Charter Study Commission states that the county is given power to abolish or consolidate agencies which had heretofore been required by state law, provided the county continues to furnish the services provided by any *230 abolished or consolidated agency. Report at IV-5; emphasis supplied.
Thus, plaintiffs argue that since the final report does not even mention the Union County Park Commission by name and refers to agencies and not boards of commissions, then the average voter did not receive notice of any such possible impact upon the Park Commission.
However, the people of Union County did not vote for the final report. They voted for the Optional County Charter Law, County Manager Form of Government, which was recommended in the final report. The public question that was on the voting machines on Election Day 1974 reads as follows:
 YES ____ Shall the County Manager Plan of the Optional County
 Charter Law be adopted for Union County with provisions
 for a board of freeholders of nine members elected for
 noncurrent terms and
 NO ____ elected at-large?
The people by referendum adopted the County Manager Plan of the Optional County Charter Law and not the report of the Charter Commission, and the law is subject to the various court interpretations set out supra. N.J.S.A. 40:41A-25 supports this view. It states that upon the adoption by the registered voters of any county of any of the optional forms of government set forth in the act, the county shall be governed by the plan adopted by the provisions of the law applicable to all optional plans and by all general laws, subject to the transitional provisions of Article 7 of the act.
The entire purpose and legislative scheme in enacting N.J.S.A. 40:41A-1 et seq. is to give the citizens of each county the right to select a change in their form of government. The entire fabric of the Optional County Charter Law is to lay a foundation for change if that is the desire and will of the voters of the county. Plaintiff does not contend that Union County seeks to end its park system. *231 Plaintiff argues for the continued autonomy by a five-person Commission as opposed to its integration into the central government of the county.
The same Legislature that created the Park Commission has from time to time altered or expanded its activities, powers and functions. Thus, the Legislature may, by enactment of N.J.S.A. 40:41A-1 et seq., change the nature and even the existence of the Park Commission.
Plaintiff argues that since the Optional County Charter Law made no specific reference to a park commission by name, and since no definition of a county agency is given by the same act, the Legislature did not intend to include the Park Commission. However, the board of freeholders already controlled the destiny of the various departments of county government, as well as bureaus and agencies within its own framework, so that no radical changes were necessary in order for the board to reform or abolish or consolidate those bodies.
The intent of the Legislature under the Optional Charter Law was to permit counties which adopted the law by referendum to totally centralize all phases of county government. In this sense the referendum of 1974 was a review and reconsideration of the referendum of 1921, at least with respect to whether, among other impacts, the voters of Union County desired to keep the former system, inclusive of an autonomous Park Commission, or whether they desired the formation of an entirely new county government possessing the authority to include autonomous and semi-autonomous bodies then in existence.
In order to harmoniously construe the Optional County Charter Law and the Park Act, provision was made in the former (N.J.S.A. 40:41A-26 and 40:41A-30) to continue the activities of the latter. There are no provisions for an end to the activities, no cessation of the existence of parks and recreational facilities, no dismissal or replacement of present employees and no halt to the programs of the Commission. The only difference will be that the board *232 of freeholders will be the final judge rather than the commissioners. The Optional County Charter Law is merely the vehicle which permits the freeholders, the duly elected representatives of the people, to be the final judge in this respect.
In American Federation of State, etc., Employees A.F.L.C.I.O., etc., v. Hudson Welfare Bd., supra, the court held that under the terms of the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq., Hudson County has the power to abolish the present structure of the Hudson County Welfare Board and approve the plan of the county to transform the proposed board into the Division of Welfare in its new proposed administrative code.
In that case plaintiff contended that the board was legislatively mandated to operate as an autonomous body pursuant to N.J.S.A. 44:7-7. However, the court disagreed with this contention and concluded as follows:
I am of the opinion that the County does have the power to abolish the Board as it presently exists pursuant to the powers bestowed upon it by the Law. It appears to me that this is the clear meaning of the Law and the intent of the Legislature. See Sutherland, supra, S 45.08. Nothing in Title 44 of the New Jersey Statutes compels a different conclusion. Insofar as the two laws are inconsistent, the later one supersedes the earlier one. The fear of the plaintiff that abolition of the independent Board will jeopardize federal welfare funds is not sound. I might add that even if it were true that federal funding might be forfeited by reason of the County's abolition of the Board, such an effect would only be evidentiary and not conclusive in construing both the meaning of the Law and the intent of the Legislature. It is my understanding that the state plan for welfare services which must be approved by the federal government before this State received federal assistance can simply be amended to make provision for any county that abolishes a county welfare board pursuant to the Law. See 42 U.S.C.A. §§ 301, 601, 1201, 1351. [141 N.J. Super. at 35-36; footnotes omitted]
The issues considered and decided in American Federation of State, etc. Employees, supra, are similar in nature and substance to those in this case. The opinion substantiates the proposition that the clear intent of N.J.S.A. 40:41A-1 *233 et seq. is to give charter counties the opportunity to proceed with a total restructuring of their governments, including all of their agencies, boards and commissions.
The decision in American Federation of State, etc., Employees is consistent with the provisions of N.J. Const. (1947), Art. IV, § VII, par. 11, to the effect that laws concerning counties shall be liberally construed in their favor, and with the requirement of N.J.S.A. 40:41A-30, supra, that the grant of power under that act shall be construed as liberally as possible in regard to the county's right to reorganize its own form of government and to reorganize its structure and to alter and abolish agencies. A rule of strict construction cannot be permitted to defeat the evident legislative design. A statute may speak as plainly by inference and by means of the purpose which underlies it as in any other manner. That which is clearly implied is as much a part of the law as that which is expressed. Alexander v. N.J. Power & Light Co., 21 N.J. 373, 379 (1956); Cammarata v. Essex Park Comm'n, 26 N.J. 404 (1958).

IV
Plaintiff contends that the Park Commission is a creature of the State, just as counties and municipalities are creatures of the State. As such, the Park Commission is not a creature of the county. This court agrees with this contention. The Park Commission has been created by state legislation, the same as counties and municipalities. However, at the same time the Park Commission, just as counties and municipalities, is subject to local control in the internal management of its affairs.
In Parks v. Union Park Comm'n, 7 N.J. Super. 5 (App. Div. 1950), the court characterized the Park Commission as an agency of the county for purposes of certain employee benefits. However, in Wall v. Hudson Park Comm'n, 80 N.J. Super. 372 (App. Div. 1963), a later case, the court held that the Park Commission was not an agent of the *234 county. However, there is no indication that the said commission is an agent of the State and not subject to local control. The park commissioners are appointed by the Union County Board of Freeholders; the Park Commission has been established for the purpose of developing and maintaining parks and for the beautification and resulting attractiveness of the county, and for the benefit  recreational and otherwise  of all of the residents; the cost of its acquisition, operation and maintenance becomes the burden, primarily of all the taxpayers of the County. The park commissioners pass final judgment on all internal policies, and the legal name is the Union County Park Commission. Furthermore, the Union County Park Commission came into existence as a result of a referendum which was approved by the voters of Union County, not the voters of the State of New Jersey.
It is true that the Park Commission has acquired lands in several adjoining counties which are contiguous to Union County park lands. This acquisition is permitted under the authority granted in N.J.S.A. 40:37-17. However, the exercise of this authority must be accomplished by a vote of the local park commissioners.
Thus it appears that the Union County Park Commission is part of the governmental structure of Union County, and since the commissioners have the authority to pass final judgment on all internal policies and affairs of the Park Commission, the county board of chosen freeholders would, under the terms of the Optional County Charter Law, possess the same authority to pass final judgment on all internal policies and affairs heretofore exercised by the park commissioners. See N.J.S.A. 40:41A-27 and N.J.S.A. 40:41A-30.
Therefore, for the reasons set out above, the motion for summary judgment made in behalf of plaintiff is denied.
The motion for summary judgment made in behalf of defendant is granted.
*235 The motion for summary judgment made in behalf of defendant-intervenor as to count 3 of the complaint is granted.
The limited restraint imposed upon defendant by order of this court shall continue in effect until the further order of the court.