150 N.J. Super. 56 (1977)
374 A.2d 1226
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BERKEY PHOTO INCORPORATED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1977.
Decided March 29, 1977.
*57 Before Judges HALPERN, MICHELS and BOTTER.
Mr. Harold Krieger argued the cause for appellant (Messrs. Krieger & Chodash, attorneys; Mr. Joseph J. Ferrara on the brief).
Mr. Steven M. Ingis, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant was convicted in the municipal court and in the County Court, on appeal de novo on the record below, of violating N.J.S.A. 2A:170-90.1. This *58 statute makes it a disorderly persons offense for an employer to
* * * influence, request or require an employee to take or submit to a lie detector test as a condition of employment or continued employment * * *.[1]
Defendant asked certain employees to take a lie detector test as an aid in investigating a theft from its plant in Clifton, New Jersey. On this appeal defendant contends that the statute was not violated primarily because the initial suggestion of using lie detector tests came from the police and, contrary to the trial judge's conclusion, the employees took the tests voluntarily and not as a condition of continued employment within the meaning of the statute.
The underlying facts are not in dispute. On October 22, 1974 defendant reported the theft of a case of cameras to the Clifton Police Department. Two detectives went to the plant and met with defendant's director of security, Jim Ahern. It was established that during the preceding weekend the cameras had been stolen from a small area of the plant which had been accessible to only six employees and an alarm repairman employed by an independent contractor.
The detectives interviewed four of the employees and asked each if they would be willing to submit to a polygraph test. The four agreed to do so. Thereafter the detectives recommended to Ahern that polygraph tests be used in the investigation. The detectives also recommended that defendant arrange for the tests privately because the Clifton Police Department did not have a polygraph team and there would be a delay of a month or more if the State Police were asked to perform the test.
Ahern conferred with the personnel director, Thomas Glynn, and they decided to ask the employees to take the test. Ahern and Glynn, and in some cases Ahern alone, *59 asked the six employees as well as the alarm repairman to take the test. All agreed to do so and signed "waiver" forms stating that they were taking the test voluntarily. For the purpose of this appeal we accept the finding that all were informed in advance that under the laws of New Jersey no employer may require a person to take a polygraph test as a condition of employment or continued employment.[2]
The six employees and the alarm repairman submitted to the tests. The questions were limited to establishing knowledge or involvement in the particular theft, except that preliminary questions were asked to relieve tension and nervousness. All persons tested were "cleared of involvement," except one employee. The test established his involvement and he confessed his guilt while the test was being administered.
N.J.S.A. 2A:170-90.1 precludes an employer from influencing, requesting or requiring an employee to take or submit to a lie detector test as a condition of employment or continued employment. There is no question that defendant here did request the employees to take or submit to the test. It makes no difference that the police initiated or recommended the procedure. The sole issue before us is whether, in the circumstances of this case, the request to take the test "was a condition of employment or continued employment" within the meaning of the statute. On this issue the opinion of our Supreme Court in State v. Community Distributors, Inc., 64 N.J. 479 (1974), aff'g *60 123 N.J. Super. 589 (Cty. Ct. 1973), is persuasive and, in our opinion, dispositive.
In Community Distributors case the defendant, the operator of a chain of drug stores, used polygraph tests as a screening device in its hiring procedures. Each of the employees involved in the charges brought against defendant was told that he or she did not have to take the test and signed a consent or waiver form. Two of the employees were unaffected by the test results, but one was fired immediately after the test revealed that she had been previously involved in a larceny. In upholding defendant's conviction for three separate violations relating to these employees, the Supreme Court stated (at 484), "Nor is there any assurance of true voluntariness for the economic compulsions are generally such that the employee had no realistic choice." The court went on to say:
We readily reject, as did the County Court * * * the defendant's contention that its request was not a condition of employment or continued employment within the statutory contemplation. Surely the employee would understand that it was despite any formal assertion by the employer to the contrary and his understanding would be wholly realistic in view of the employment relationship. The legislative goal would obviously be frustrated if Drug Fair's procedure were now judicially declared to be outside the prohibitory orbit. In the light of the "breadth of the objectives of the legislation and the common sense of the situation" * * * there can be little doubt that the conduct of the defendant here was violative of the statute. [at 485]
That a crime was being investigated and the police were involved does not justify the employer's intrusion of a lie detector test into an employment relationship. Nor do these factors lessen the compulsion inherent in the situation. In fact, it may heighten that unspoken compulsion. Here, for example, one employee testified that he "volunteered" to take the test, after being told he did not have to do so and that his refusal would not affect his continued employment, because he was a security guard, he was in the building when the theft occurred and he wanted *61 "to clear" himself of suspicion. Another employee, the plant manager, testified that he had a "duty" to take the test "voluntarily." Surely the employees understood what was expected of them when told that others were taking the test. How else can one explain that the guilty employee, the one who confessed, submitted to the test knowing the risk he was taking?
Appellant seeks to distinguish Community Distributors from the case at hand. However, the use of the words "as a condition of * * * continued employment" clearly shows that the statute was intended to apply to an established employment relationship as well as to the initial hiring process, as in Community Distributors.
Finding no legal justification in these circumstances for defendant's requests to its employees and its administration of the tests, we affirm defendant's conviction for each separate violation.
NOTES
[1] Defendant was charged with five separate violations, each involving a different employee, and was fined $100 for each violation, plus court costs.
[2] One employee testified on cross-examination by defendant that Ahern did not tell him that the test was voluntary and that he could refuse to take it. His testimony was that he was told that others were taking the test and that they had a good chance of establishing that another employee and possibly two others were involved in the theft. However, he did sign the form when asked to do so by the person who administered the lie detector test.

Another involved employee, the plant manager, testified that he felt that it was his "duty to take the test voluntarily * * *."