THE CITY OF EAST ORANGE, BY ITS BOARD OF POLICE COMMISSIONERS, PROSECUTOR, v. CIVIL SERVICE COMMISSION OF NEW JERSEY AND JOSEPH E. McGINLEY, DEFENDANTS.

Argued January 18, 1944—Decided July 21, 1944.

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Walter C. Ellis.*

For the defendant Joseph E. McGinley, *Edward J. Gilhooly.*

The opinion of the court was delivered by

HEHER, J.  On July 22d, 1943, the Civil Service Commission set aside the action of the Board of Police Commissioners of the City of East Orange reducing the number of lieutenants in the local police department from three to two and establishing "the policy of requiring a sergeant or sergeants to regularly perform the duties of lieutenant on one eight-hour shift each day," and directed it "to make an appointment" from the register of eligibles to be certified

by the commission "to fill the existing vacancy in the rank and grade of lieutenant, in order that there may be at all times an officer of that rank available to perform the duties of lieutenant under the existing plan of organization" of the police force, "and as now defined and prescribed in the official rules and regulations of the department." The proceedings have been brought up for review by a writ of *certiorari* sued out by the municipality.

The asserted jurisdiction was invoked by the defendant McGinley, a local police sergeant who was first on a roster of eligibles promulgated by the Civil Service Commission on July 9th, 1942, for appointment to a lieutenancy vacated on the prior July 1st by the retirement of the incumbent on pension. McGinley qualified in an examination conducted by the commission on September 10th, 1941, pursuant to the request of the local chief of police. But there was no appointment to fill the vacancy. On January 18th, 1943, the Board of Police Commissioners adopted the challenged resolution reducing the number of lieutenants from three to two. It was therein recited that, "by reason of inductions into the military service," the police department had been "considerably reduced in number and may be subjected to further reductions," and that the action thus taken was "deemed proper for reasons of economy." The departmental personnel then numbered 104, reduced from 115, of whom 16 were superior officers. The normal complement theretofore, over a number of years, had been 115. Thereupon, the sergeants rotated in the doing of the "desk duty" incident to the office of lieutenant, each serving for a continuous period of four weeks. This course was taken under a departmental rule (No. 199) providing that sergeants "shall familiarize themselves with the working of the police signal system and other duties of the lieutenant, so that they can properly and efficiently perform desk duty when so required."

During the prior period of twenty-five years, there had not been fewer than three lieutenants, and for some of the time there had been four. The lieutenants, sergeants and patrolmen all worked on three shifts of eight hours each. The rules assigned "desk duty" to the lieutenants; and a lieutenant was

"in charge of the desk" at the station house on each of the three shifts. Under the rules, in the absence of the chief and captain, the "desk lieutenant" has "charge and supervision" of the "entire police department" and is laden with "the duties of a captain." The sergeants have "immediate supervision of patrolmen on patrol duty, and of patrolmen assigned to special duty in their respective districts," and are under the duty of "constantly" patrolling their districts, "seeing each man on post as often as possible and enforcing the performance of duty." It has been the practice, and this seems to be the purport of rule 199, to assign a sergeant to temporary desk duty whenever a lieutenant was not available for such service. When the particular vacancy occurred, the defendant McGinley was assigned to desk duty as an acting lieutenant, and he functioned continuously in that capacity until the taking of the action in question.

The Civil Service Commission found that economy was not the motivating consideration for the resolution under review. It pointed to evidence that a patrolman had thereafter been promoted to a sergeancy; that "a number" of new patrolmen had been appointed, and that substantial bonuses had been granted to members of the police force and salary increases given to other employees of the city.

The municipality was incorporated under *chapter* 250 *of the Laws of* 1908, *Pamph. L., p.* 486; *R. S.* 40:103–5. By ordinance, the Board of Police Commissioners was established for the management of the police department, in accordance with the authority conferred by *section* 37 of that statute. The municipality has adopted the provisions of the *Civil Service Act. R. S.* 11:1–1, *et seq.*

It is urged, *in limine,* that the judgment of the Civil Service Commission is *coram non judice.* We entertain the contrary view.

By *R. S.* 11:1–6, the commission is endowed with "general supervision over all activities carried on under this title." More specifically, it is empowered to "Enforce the provisions of this title and the rules and regulations of the commission made in accordance therewith and secure compliance therewith both within the service of the state, and a county, munici-

pality, or school district operating under the provisions" of the act, and "for that purpose * * *, as the commission," to "bring such suits or actions, either at law or in equity as may be necessary and appropriate." *R. S.* 11:1–7 (d). Also, it "may make investigations concerning matters pertaining to the enforcement and effect of this title and the rules and regulations prescribed thereunder and concerning the action of an examiner or subordinate of the commission and any person in the paid employ of this state or a county, municipality, or school district operating under the provisions" of the act, "in respect to the execution of this title." *R. S.* 11:1–16. And, when a local agency "violates any of the provisions" of the act "in selecting persons for employment, or in the designation of an employee for appointment," the commission may intervene and exercise corrective authority by means of a summary review at the instance of a citizen of the state. *R. S.* 11:25–1, *et seq.*

While its authority is necessarily special and limited, the commission is invested with such powers as by fair implication and intendment are incident to and reasonably included in those expressly granted for the effectuation of the statutory policy. *Newark* v. *Civil Service Commission,* 115 *N. J. L.* 26.

The act provides that no person shall be "appointed or employed under any title not appropriate to the duties to be performed nor assigned to perform the duties other than those properly pertaining to the position which he legally holds." *R. S.* 11:22–12. Considered in the light of the local police rules and regulations laying down the duties of lieutenants and sergeants, the action under review plainly contravenes this section of the statute; and it is the indubitable reason and spirit of the remedial provisions adverted to that the enforcement of this statutory direction shall be the function and duty of the administrative body set up to administer the legislative policy. Obviously, the design of *section* 11:22–12 is to preclude evasion of the statutory scheme.

This disposes also of the further contention that the challenged action constitutes an unwarranted interference with the local police commission's essential function to determine

the "number of superior officers * * * needed," and to abolish "unnecessary offices in the interest of economy." Whatever the motivation, we are convinced it was not a *bona fide* yearning for economical management. But however this may be, the office itself remained in existence. Its functions were permanently assigned to the sergeants; and this, as we have seen, runs counter to *section* 11:22–12, *supra*. A limited assignment for relief purposes merely or to meet a temporary exigency would fall into a different category. As stated, the departmental rules make provision for such service needs. There was no such reconstitution of the police system as would call for the abolition of this particular office. We are unable to perceive any relation between the reduction in personnel and the number of lieutenants. Three lieutenants are indispensable if the department, as now constituted, is to function on the basis of three eight-hour shifts. Thus, the purported abolition of one of the lieutenancies was but colorable and illusory, and in essence an evasion of the Civil Service Law. Compare *City of Camden* v. *Civil Service Commission*, 118 *N. J. L.* 501. See, also, *Newark* v. *Civil Service Commission*, 114 *Id*. 406.

The judgment of the Civil Service Commission is accordingly affirmed, with costs.