ATLANTIC COMMUNITY COLLEGE, BERGEN COMMUNITY COLLEGE, BROOKDALE COMMUNITY COLLEGE, BURLINGTON COUNTY COLLEGE, CAMDEN COUNTY COLLEGE, COUNTY COLLEGE OF MORRIS, CUMBERLAND COUNTY COLLEGE, ESSEX COUNTY COLLEGE, GLOUCESTER COUNTY COLLEGE, MERCER COUNTY COMMUNITY COLLEGE, MIDDLESEX COUNTY COLLEGE, AND OCEAN COUNTY COLLEGE, PETITIONERS, v. CIVIL SERVICE COMMISSION, RESPONDENT.

Argud May 25, 1971—Decided July 12, 1971.

*Mr. Stephen B. Wiley* argued the cause for petitioners (*Messrs. Meyner and Wiley,* attorneys; *Mr. Thomas D. Hogan* on the brief).

*Mr. Theodore A. Winard,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Theodore A. Winard,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

PROCTOR, J. ▇ The issue in this case is whether nonprofessional and noninstructional employees of county community colleges in counties which have adopted Civil Service are subject to the Civil Service Law, *N. J. S. A.* 11:1–1 *et seq.*

On September 9, 1970, three years after receiving an opinion from the Attorney General that such employees were covered by Civil Service, the respondent Department of Civil Service issued a ruling to that effect. Following the Department's ruling, petitioners, 12 county colleges, situated in counties which have elected Civil Service for county government pursuant to *N. J. S. A.* 11:19–2, appealed the Department's ruling to the Appellate Division. We granted certification on our own motion prior to argument below. *R.* 2:12–2.

Some discussion into the background of the present dispute is necessary to an understanding of the issues involved. By *N. J. S. A.* 18A:64A–1 *et seq.,* a county board of freeholders is authorized to petition the State Board of Higher Education for permission to establish a county college. Since July 1, 1963, the effective date of that legislation, 15 county colleges have been organized under this statute.[1] These col-

---

[1] Of the 15 colleges organized to date under *N. J. S. A.* 18A:64–1 *et seq.,* 12 have appealed the Department's ruling. These include Atlantic Community College, Bergen Community College, Brookdale Community College (Monmouth County), Burlington County College, Camden County College, County College of Morris, Cumberland County College, Essex County College, Gloucester County College, Mercer County Community College, Middlesex County College, and Ocean County College. Of the remaining three colleges, Somerset County Communty College was excluded from the ruling since Somerset County has not adopted Civil Service. The other two colleges did not appeal.

leges offer educational programs extending not more than two years beyond high school which may include college credit transfer courses, terminal courses in the liberal arts and science, and technical training *N. J. S. A.* 18A:64A–1 (a). Upon completion of the requirements, the student receives a diploma or degree from the college. *N. J. S. A.* 18A:64A–12(i).

The financial support of these colleges is also provided for by statute. Under *N. J. S. A.* 18A:64A–22 they receive State aid which cannot exceed one-half, or a maximum of $600 per equated full-time student, for their operating costs. Student tuition and county funds provide the balance of operating revenues in roughly equal shares, the former slightly exceeding the latter on an overall average.

Under the statutory scheme, the board of trustees which consists of the county superintendent of schools and eight persons appointed by the board of freeholders (*N. J. S. A.* 18A:64A–8) is given extensive power to manage and control the county college. The board of trustees has the power to appoint and fix the compensation and term of office of a president of the college who serves as an ex officio member of the board. *N. J. S. A.* 18A:64A–12(e). It also has the power to appoint upon nomination of the president members of the administrative and teaching staffs, and the power to fix their compensation and terms of employment.[2] *N. J. S. A.* 18A:64A–12(f). Finally, and critical to the present controversy, is the board's power to deal with nonprofessional and noninstructional employees. *N. J. S. A.* 18A:64A–12(g) provides:

---

[2]Compensation and terms of employment of administrative and teaching staffs are, however, expressly subject to the provisions of *N. J. S. A.* 18A:64A–13 which provides that the "teaching staff employees and administrative officers other than the president of the county college are hereby held to possess the rights and privileges of teachers employed by local boards of education." More will be said of this later. See note 6 *infra.*

g. *To appoint or employ such other* officers, agents and *employees as may be required to carry out the provisions of this chapter and to fix and determine their qualifications, duties, compensation, terms of office and all other conditions and terms of employment and retention.* (emphasis added)

In ruling that nonprofessional and noninstructional employees of county colleges are subject to Civil Service, the Department based its decision on the opinion of the Attorney General previously referred to. That opinion reasoned that nonprofessional and noninstructional employees came under Civil Service because annual appropriations of tax moneys from a county to its county college (*N. J. S. A.* 18A:64A–17 and 18), and annual support provided by the State to such colleges (*N. J. S. A.* 18A:64A–22) placed such employees in the paid service of the county. Consequently, these employees were subject to Civil Service if they were employed by colleges in counties which had adopted Civil Service.[3] For the reasons to follow, we hold that nonprofessional and noninstructional employees of county colleges are not subject to Civil Service.

█ *N. J. Const., Art. VII,* § 1, *par.* 2, provides in pertinent part:

Appointments and promotions in the civil service of the State, *and of such political subdivisions as may be provided by law,* shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive * * *. (emphasis added)

If nonprofessional and noninstructional employees are to be accorded Civil Service status, they must be in the paid service of the State or some political subdivision to which Civil Service is made applicable by law. There is no conten-

---

[3]The opinion excepted from Civil Service employees who were appointed for a definite term since under *N. J. S. A.* 18A:64A–12(g) the board of trustees is given the power "to fix . . . terms of office." No mention was made of the board's power "to fix and determine * * * *qualifications, duties, compensation,* * * * *and all other conditions and terms of employment and retention.*" (emphasis added)

tion that these employees are in the paid service of the State. Rather, it is urged that county colleges are agencies of their county governments and their employees must be accorded Civil Service protection if the county has adopted it for other employees. It is further contended that the Legislature's failure to specifically exclude such employees from Civil Service shows that the Legislature intended Civil Service to apply. In other words, it is urged that legislative silence should be construed as affirmative action in this regard.

■ Turning to the first contention, we are not persuaded that county colleges are agencies of county government. Rather, we believe that they are separate political subdivisions which serve a separate purpose and operate apart from the governing bodies of the counties in which they are situated. Examination of the statutory scheme is demonstrative of this conclusion.

After receiving a petition from a county board of freeholders (*N. J. S. A.* 18A:64A–2), the Board of Higher Education is authorized to approve the establishment of a county college upon a finding that a need for such a college exists and that the establishment and maintenance of such a college is financially feasible. If the Board of Higher Education gives its approval, the board of freeholders is authorized to establish a county college by resolution. *N. J. S. A.* 18A:64A–3. In the event that there are sufficient objections from the registered voters, a referendum procedure is provided for. *N. J. S. A.* 18A:64–3 and 4. Upon establishment of the county college by either referendum or resolution, the Board of Higher Education is empowered to establish rules and regulations governing the creation and operation of the college, including the accounting system, financial controls, tuition, rates, attendance of nonresidents, standards for granting diplomas and minimum qualifications for professional staff members. *N. J. S. A.* 18A:64A–7.

Thereafter, a board of trustees, consisting of the county superintendent of schools and eight persons appointed by the

director of the board of freeholders with the advice and consent of that board is authorized to manage and control the college. *N. J. S. A.* 18A:64A-8. The members of the board of trustees, except for the first appointments, are appointed for a four-year term; vacancies are staggered. They cannot be removed by the board of freeholders except for cause upon notice and opportunity to be heard. *N. J. S. A.* 18A:64A-9.

For county financing, a county college has a board of school estimate, consisting of the chairman of the board of freeholders, two members of the board of freeholders appointed by that board and two members of the board of trustees appointed by that board. *N. J. S. A.* 18A:64A-15. The board of trustees presents an itemized statement of "the amount of money estimated to be necessary for the operation and capital outlay expenses for the ensuing year"; the board of school estimate holds a public hearing on the proposed budget; the board of school estimate then fixes and determines "the amount of money necessary for the operation and capital outlay expenses of the college for the ensuing year, exclusive of the amount to be received from the state and from other sources," and certifies that amount to the board of freeholders. *N. J. S. A.* 18A:64A-17. The board of freeholders must then appropriate the amount of the operational expenses certified "in the same manner as other appropriations are made * * *." *N. J. S. A.* 18A:64A-18. With respect to the certified amount for capital outlay expenses, the board of freeholders may either appropriate such funds in the usual manner or by "authorizing the issuance of bonds or notes of the county * * *." *N. J. S. A.* 18A:64A-19(2)(a)(b).

Respondent argues that this statutory scheme precludes a finding that nonprofessional and noninstructional employees of county colleges should be treated any differently than other county employees as far as Civil Service is concerned. It contends that the county has retained substantial control over the development and management of the colleges through the power of appointment and majority representation on

the board of school estimate. There is no merit to this contention.

Although members of the board of trustees are appointed by the county board of freeholders, once appointed the board of trustees is given extensive power to appoint officers, agents and employees of the college, fix their compensation and terms of office; to enter into contracts and agreements with the State or any of its political subdivisions or with the United States or with any public body; to accept grants and contributions from public and private sources; to acquire property for college purposes (either by purchase or through the exercise of the power of eminent domain), to purchase books and library materials without advertising for bids; to sue and be sued; and to fix and determine tuition rates and other fees to be paid by students. *N. J. S. A.* 18A:64A–12 and 12.1.

It seems clear to us that the legislative intent as manifested in *N. J. S. A.* 18A:64A–1 *et seq.,* and the operative effect of that act is that county colleges exist apart from, and independent in their internal affairs of the local county government. As was stated in *Monte v. Milat,* 17 *N. J. Super.* 260, 265 (Law Div. 1952), in rejecting a contention that a housing authority was a subordinate board of the municipality:

The fact that a housing authority can be created only by and with the consent of the governing body of the municipality and that the power of appointment and removal of its members is lodged with the municipality is indicative of the close relationship between the authority and the city, the latter naturally being interested in the result to be accomplished. But all that is entrusted to the municipality is the creation of the authority not the delegation of its powers. The powers of the authority are derived, not from the municipality, but from the State, and the governing body of the municipality in deciding upon the desirability of creating an authority and in exercising the power of appointment and removal of its members is acting merely as a statutory agent.

See also *New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235, 243 (1949); *Gualano v. Board of School Estimate of*

*Elizabeth School District,* 39 *N. J.* 300, 303 (1963). Finally, in answer to respondent's contention that the board of free-holders represents a majority on the board of school estimate, we need only point out that in Type I school districts a similar situation prevails since two members of the governing body and the mayor of the municipality comprise a majority on the board of school estimate. Yet in *Gualano v. Board of School Estimate of Elizabeth School District, supra,* we held that Type I school districts are autonomous bodies, independent of the municipality in their operation. County colleges are just as independent.

Respondent argues that even if the county colleges are largely independent of the counties in matters of internal operation, the Civil Service laws nevertheless apply because the county and State governments provide nearly 70% of the annual operating expenses of the colleges and that county college employees are therefore in the paid service of the county, citing *State v. Clark,* 15 *N. J.* 334 (1954); *Glick v. Trustees of Free Public Library,* 2 *N. J.* 579 (1949); *E. Pennsauken Vol. Fire Ass'n # 1 v. Pennsauken Tp.,* 85 *N. J. Super.* 104 (App. Div. 1964); *Sullivan v. McOsker,* 84 *N. J. L.* 380 (E. & A. 1913); *Newark Library Trustees v. Civil Serv. Comm.,* 86 *N. J. L.* 307 (E. & A. 1914); *Parks v. Union County Park Commission,* 7 *N. J. Super.* 5 (App. Div. 1950). *Compare State v. Parking Authority of the City of Trenton,* 29 *N. J. Super.* 335 (App. Div. 1954).

Financial support of county colleges comes from three basic sources: state aid,[4] student tuition and county ap-

---

[4]With respect to State assistance, the board of trustees petitions the State Board of Higher Education; it may receive State support:

(a) For capital projects approved by the Board of Higher Education in amounts not to exceed one-half of the cost of said capital projects, and

(b) For operational costs to the extent of one half thereof or $600 per equated full-time student, including such students resident in other counties, whichever is the lesser amount. *N. J. S. A.* 18A:64A-22. *See Holster v. Board of Trustees of Passaic County College,* 59 *N. J.* 60 (1971).

propriations. According to statistics supplied by the respondent, these three sources contributed in the fiscal year 1970–71 respectively 43%, 26% and 26% of the financial support for operational expenses.

Since the bulk of the funds comes from the State, it is difficult to understand respondent's contention that county support places college employees in the paid service of the county. The cases relied upon by the respondent deal with situations where employees received all their compensation from the county or municipality. In the present case most of the support comes from sources other than the county. Moreover, the argument that partial support establishes an agency relationship between political entities in regard to Civil Service was rejected by Judge Larner in *DeAngelis, et al. v. Addonizio,* 103 *N. J. Super.* 238, 253 (Law Div. 1968), and we agree with that conclusion.

In any event, it must be remembered that support of or control over a public body by a political subdivision which has adopted Civil Service is merely evidence of whether the Legislature intended Civil Service to apply to the public body. Where a public body is completely financed or controlled by a political subdivision, a court is justified in concluding that the Legislature intended the employees of that body to be treated the same way as other employees of the political subdivision. See *State v. Clark, supra.* But the test is not conclusive. It is merely an indicium of legislative intent and where the Legislature has spoken otherwise, any intent to be inferred from the relationship is obviously rebutted.

Respondent contends that the Legislature has not spoken on the subject and that the County College Law is silent on the question of whether Civil Service applies to the employees of county colleges. We disagree. Although there is no specific mention of Civil Service in the law governing county colleges, we think that the statute dealing with the employees involved is wholly incompatible with Civil Service and shows a legislative intent to preclude application of Title 11. *N. J.*

*S. A.* 18A:64A–12(g), which deals with nonprofessional and noninstructional employees, provides that the board of trustees shall have the power "to appoint" such employees and "to fix and determine their qualifications, duties, compensation, terms of office and all other conditions and terms of employment and retention.[5] These are the very subjects with which Civil Service deals and are in direct conflict with the powers granted to the Civil Service Commission. For example, the Commission has the power to prepare a classification plan and to determine duties, qualifications, character of work, hours of work and compensation, *N. J. S. A.* 11:24–1 to 3; to approve promotions, transfers, reductions, dismissals, etc., *N. J. S. A.* 11:21–4; to fix the duties of a position, *N. J. S. A.* 11:22–12; to use competitive tests for employment eligibility, *N. J. S. A.* 11:21–3; to provide for the use of competitive tests in promotions, *N. J. S. A.* 11:22–34; to provide for appointments from eligibility lists, *N. J. S. A.* 11:22–32; to regulate holidays, hours of work, vacations, and sick leave, *N. J. S. A.* 11:24A–1 to 7; to establish machinery for appeal in connection with suspension, demotion, and removal, *N. J. S. A.* 11:22–38 to 40.

It is impossible to reconcile these Civil Service powers granted to the Civil Service Commission with the powers granted to the board of trustees in *N. J. S. A.* 18A:64A–12(g). If the Legislature had intended the nonprofessional and noninstructional employees of county colleges to be under Civil Service, we are convinced it would not have given to the college board of trustees such comprehensive powers over its personnel. Since the County College Law was enacted subsequent to the Civil Service Law and is in con-

---

[5]This language is substantially the same as that used in the Delaware River and Bay Authority Compact. The Authority, which is not subject to Civil Service, is empowered "[t]o appoint, or employ, such other officers, agents, attorneys, engineers and employees as it may require for the performance of its duties and to fix and determine their qualifications, duties, compensation, pensions, terms of office and all other conditions and terms of employment and retention." *N. J. S. A.* 32:11E–1, *Art. VII* (e).

flict with it, we can only conclude that the Legislature meant to exclude county college employees from Civil Service. See *State v. Parking Authority of the City of Trenton,* *supra,* 29 *N. J. Super.* at 339. That the Legislature did not specifically mention Title 11 in the County College Law can hardly be deemed "silence" on the subject in view of the broad powers granted to the board of trustees under subsection (g).[6]

■ We regard the legislative intent manifested in the County College Law as conclusive of this case. This is so regardless of whether a county college is an agency of the county or not. While we do not believe it is, we see no reason why the Legislature cannot exempt parts of county government if it so chooses. Despite respondent's suggestion to the contrary, there is nothing in our Constitution which prohibits the Legislature from so acting.

For the foregoing reasons, the Civil Service Commission's ruling that nonprofessional and noninstructional employees of county community colleges are subject to Civil Service is reversed.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.

---

[6]Our conclusion regarding legislative intent is buttressed by subsection (f) (*N. J. S. A.* 18A:64A–12(f)) which provides that the board of trustees may fix the compensation and terms of employment for administrative and teaching staff employees. As previously mentioned, this power is subject to *N. J. S. A.* 18A:64A–13 which gives teaching and administrative staff employees "the rights and privileges of teachers employed by local boards of education." Thus, the Legislature specifically provided additional rights for teachers, including tenure, while in the same statute it did not mention additional rights for nonprofessional and noninstructional employees. This comparison points in the direction of a purposeful omission rather than an oversight.