151 N.J. Super. 1 (1977)
376 A.2d 240
BOARD OF TRUSTEES OF MERCER COUNTY COMMUNITY COLLEGE, A BODY CORPORATE OF THE STATE OF NEW JERSEY, AND, BOARD OF EDUCATION OF THE VOCATIONAL SCHOOLS IN THE COUNTY OF MERCER, PLAINTIFFS,
v.
ARTHUR R. SYPEK, SR., COUNTY EXECUTIVE OF THE COUNTY OF MERCER, AND ALBERT E. DRIVER, EUGENE V. HOWARD, GILBERT W. LUGOSSY, BARBARA H. SIGMUND, PAUL J. SOLLAMI, JOSEPH E. TIGHUE AND JOHN S. WATSON, MEMBERS OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MERCER, DEFENDANTS. AMICI CURIAE: COUNCIL OF COUNTY COLLEGES, AND, NEW JERSEY EDUCATION ASSOCIATION, MERCER COUNTY COMMUNITY COLLEGE FACULTY ASSOCIATION, MERCER COUNTY VOCATIONAL EDUCATION ASSOCIATION, AND THE ASSOCIATION OF NEW JERSEY COLLEGE FACULTIES.
Superior Court of New Jersey, Law Division.
Decided May 20, 1977.
*3 Messrs. Smith, Stratton, Wise & Heher (by Mr. Garrett M. Heher), attorneys for plaintiff Board of Trustees of Mercer County College.
Mr. William C. Baggitt, III, attorney for plaintiff Board of Education of the Vocational Schools in Mercer County.
Mr. Harvey L. Stern, Mercer County Counsel, attorney for defendants Arthur R. Sypek, Sr., Albert E. Driver, Eugene V. Howard, Gilbert W. Lugossy, Barbara H. Sigmund, Paul J. Sollami, Joseph E. Tighue and John S. Watson.
Messrs. Kessler, Tutek & Gottlieb (by Mr. Myron H. Gottlieb), attorneys for amici curiae Council of County Colleges.
Messrs. Ruhlman and Butrym (by Mr. Cassel R. Ruhlman, Jr.), attorneys for amici curiae New Jersey Education Association, Mercer County Community College Faculty *4 Association, Mercer County Vocational Education Association, and the Association of New Jersey College Faculties.
SCHOCH, A.J.S.C.
This action in lieu of prerogative writs was instituted by the Board of Trustees of Mercer County Community College (MCCC) against the County Executive of Mercer County and the members of the Board of Chosen Freeholders of that County (Board) seeking injunctive relief against defendants, restraining them from exercising any authority over the plaintiff by enforcing the provisions of the Administrative Code adopted by the Board, and for a judgment declaring that plaintiff is a unit of government unaffected by the adoption by Mercer County of the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq. After an answer was filed by defendants, the following organizations were granted leave to appear as amici curiae: New Jersey Education Association, Mercer County Faculty Association, Mercer County Vocational Educational Association, Association of New Jersey County College Faculties, and Council of County Colleges.
The Board of Education of the Vocational Schools Mercer County (Vo-Tech) joined in the action as an additional plaintiff seeking the same relief as that of MCCC.
There is no dispute about the factual background, and it can be simply stated. Plaintiff MCCC was established in 1966 pursuant to N.J.S.A. 18A:64A-1 et seq., and plaintiff Vo-Tech was organized in 1968 under N.J.S. 18A:54-1 et seq. In September 1972 the New Jersey Legislature adopted the Optional County Charter Law, N.J.S.A. 40:41A-1 et seq. In accordance with that act, a charter study commission was formed in Mercer County; sometime thereafter a formal report was submitted by that commission recommending the County Executive Plan under the Charter Act. Subsequently, the voters of Mercer County adopted this plan and, as a result, in April 1976 an Ordinance was passed on first reading, effective May 1, 1976, adopting an *5 Administrative Code pursuant to the County Executive Plan. This ordinance contains provisions which substantially alter both the existing structure of the two plaintiffs and the relationship between those plaintiffs and the county. The Code provides for considerable administrative control by the county; the board of school estimate is abolished, and the total effect of the implementation of this Code is to reduce plaintiffs from their autonomous status to that of county agencies and to place complete control in the hands of the Board.
The major issue in this case is whether plaintiffs are separate political subdivisions of the State, governed by Title 18A and not subject to the Charter Act, or whether the Charter Act brings these plaintiffs within the jurisdiction and control of the county.
There are several sections of the Charter Act which must be considered, interpreted and applied in order to resolve this issue.

40:41A-25. Government of county after adoption of optional plan

Upon adoption by the registered voters of any county of any of the optional forms of government set forth in this act, the county shall thereafter be governed by the plan adopted by the provisions of this law applicable to all optional plans, and by all general laws, subject to the transitional provisions in article 7 of this act.

40:41A-26. General law

For the purposes of this act, a "general law" shall be deemed to be such law or part thereof, heretofore or hereafter enacted, that:
a. Is not inconsistent with this act; and
b. Is by its terms applicable to or available to all counties, or;
c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.
Nothing in this act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by State statute providing that such abolition or consolidation shall not alter the obligation of the county to continue providing the services previously provided by such abolished or consolidated agency.
The intent of this act is to enable a county that has adopted a charter pursuant to this act to cause any duty that has been mandated to it by the Legislature to be performed in the most efficient *6 and expeditious manner, and, absent a clear legislative declaration to the contrary, without regard to organizational, structural or personnel provisions contained in the legislation mandating such duty.

40:41A-27. County powers generally

Any county that has adopted a charter pursuant to this act may, subject to the provisions of such charter, general law and the State Constitution:
a. Organize and regulate its internal affairs; create, alter and abolish offices, positions and employments and define the functions, powers and duties thereof; establish qualifications for persons holding offices, positions and employments; and provide for the manner of their appointment and removal and for their term, tenure and compensation.

40:41A-28. Municipal powers

Nothing in this act shall be construed to impair or diminish or infringe on the powers and duties of municipalities and other units of government under the general law of this State. It is the intent of this act only to permit municipalities and other units of government to employ services and facilities of the county for more effective, efficient, and adequate provision of services if and when such units may deem it desirable to do so. Municipalities are and shall remain the broad repository of local police power in terms of the right and power to legislate for the general health, safety and welfare of their residents.

40:41A-30. General powers

The grant of powers under this act is intended to be as broad as is consistent with the Constitution of New Jersey and with general law relating to local government. The grant of powers shall be construed as liberally as possible in regard to the county's right to reorganize its own form of government, to reorganize its structure and to alter or abolish its agencies, subject to the general mandate of performing services, whether they be performed by the agency previously established or by a new agency or another department of county government.
Plaintiffs contend that the intent of this act was limited to giving counties greater power over their own internal structure, further arguing that they are not part of the "internal structure" and are not "agencies" but rather "other units of government" and consequently excluded from operation of this law. They rely particularly on the case of Atlantic Community College v. Civil Service Comm'n, 59 N.J. 102 (1971), which considered the issue of whether non-professional employees of county community colleges were subject to the Civil Service Law. It was urged on behalf of *7 defendant that county colleges are agencies of their county governments and therefore the employees must be accorded civil service protection if the county had adopted it for other employees. In considering that contention the court said:
We are not persuaded that county colleges are agencies of county government. Rather, we believe that they are separate political subdivisions which serve a separate purpose and operate apart from the governing bodies of the counties in which they are situated. Examination of the statutory scheme is demonstrative of this conclusion. [at 107]
There follows a review of the various sections of N.J.S.A. 18A:64A-1 et seq., and then appears the following language:
It seems clear to us that the legislative intent as manifested in N.J.S.A. 18A:64A-1 et seq., and the operative effect of that act is that county colleges exist apart from, and independent in their internal affairs of the local county government. [at 109]
Based on this language the plaintiffs conclude that the phrase
nothing in this act shall be construed to prevent counties from abolishing or consolidating agencies the existence of which has heretofore been mandated by State statute * * * ... [N.J.S. 40:41A-26]
does not apply to them but that they are "other units of government" referred to in § 28
* * * nothing in this Act shall be construed to impair or diminish or infringe on the powers and duties of municipalities and other units of government under the general law of this State. [Emphasis supplied]
Plaintiffs advance the further argument that the Charter Act and Title 18A must be read in pari materia; that there is no clear repugnancy between these two acts, and as implied *8 repealers are not favored in the law, the court must conclude that the Charter Act was not meant to supersede or repeal Title 18A as it applies to these two plaintiffs.
Defendants counter with several arguments. First, they say that the Atlantic Community College case is not controlling because the court was considering the state of the law at that time, which was prior to the passage of the Charter Act. They also attempt to distinguish that case on the facts, and suggest that the language relied upon by plaintiffs was dictum.
Defendants also argue that the effect of § 26 of the Charter Act is to have the act supersede Title 18A. Under § 25 of the act
* * * the county shall thereafter be governed by the plan adopted by the provisions of this law applicable to all optional plans, and by all general laws * * *
The phrase "general law" is defined in § 26 as
* * * such law or part thereof, heretofore or hereafter enacted that: (a) Is not inconsistent with this Act; and * * * (c) Is applicable to all counties * * *, and deals with * * *: education * * *
Defendants' reasoning is that if Title 18A is not inconsistent with the Charter Act, then it is not superseded. However, defendants contend that the two acts are clearly repugnant, particularly in the area of budget preparation and control, and consequently cannot be considered general laws applicable to the Charter Act.
Further arguments advanced by plaintiffs or the amici suggest that the community colleges are independent agencies which are integral parts of a state-wide governmental activity and thus not subject to county control. It is further suggested that the establishment and maintenance of county community colleges is not mandated by the Legislature and, so, the argument goes, is consequently not an agency affected by the Charter Act.
*9 The county concedes that it cannot abolish any services which it has been providing under mandate of state statute, and does not contend that it will not have to follow those regulations promulgated by the State Commissioner of Education or the Commissioner of Higher Education, but takes the position that it has the authority to control the operation of these institutions of learning in accordance with its Administrative Code.
The legislative history of the Charter Act is important in determining the intent of the Legislature. The act was adopted by the Legislature in response to the findings and reports of the County and Municipal Study Commission (Musto Commission) which was charged with the responsibility of studying the structure and function of county and municipal governments. The Commission published its findings, conclusions and recommendations in a report entitled "County Government: Challenge and Change (1969)." On page XIX of that report are listed the Commission's general recommendations, one of which is:
Reorganize themselves [counties] as they see fit, under general law, including the right to consolidate agencies, boards and commissions.
Further, at page 17 of that report is this language:
If the county is to play a wider role in local government, it must be given adequate legal authority. Specifically, we see the need for legal powers in the following areas: (1) internal reorganization  with the power not only to reorganize or consolidate departments but to centralize functions now performed by autonomous boards, agencies and commissions where desirable. [Emphasis supplied]
Although these comments and recommendations are not binding on this court, they are to be accorded a good deal of weight in the search for legislative intent.
Repeals by implication are disfavored. Brewer v. Porch, 53 N.J. 167, 173 (1969); Loboda v. Clark Tp., 40 N.J. 424 (1963). In the absence of an express repealer the legislative intent to effect such a repeal must be clear. *10 N.J. State P.B.A. v. Morristown, 65 N.J. 160 at 164; Labor & Industry Dept. v. Cruz Construction Co., 45 N.J. 372, 380 (1965). However, when a subsequent legislative enactment clearly conflicts with an earlier statute affecting the same subject matter the courts will find a legislative intent to supersede the earlier law. Montclair v. Stanoyevich, 6 N.J. 479 (1951). The search is for legislative intent. Trap Rock Industries, Inc. v. Sagner, 69 N.J. 599 (1976); Gangemi v. Berry, 25 N.J. 1 (1957). In seeking to discover legislative intent it is to be presumed that the Legislature is aware of all its prior enactments. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291 (1968). The new law is to be read in the light of the old law and the evils to be remedied. Key Agency v. Continental Cas. Co., 31 N.J. 98 (1959). To this end, resort must be had to the history and purpose of the law. State v. Brown, 22 N.J. 405 (1956). If new laws drastically change the old ones, this might be an indication of the legislative intent. N.J. State P.B.A. v. Morristown, supra, 65 N.J. at 165; Mahr v. State, 12 N.J. Super. 253, 261 (Ch. Div. 1951).
It is my opinion that the intent of the Legislature in enacting the Charter Act was to give to the county governments established under the act broad powers to reconstruct not only their internal affairs but also to bring within their control numerous autonomous bodies which had developed over the years under the former types of county government. I refer to such bodies as park commissions, welfare boards, mosquito control commissions, and I include within that group of agencies the educational institutions that are the plaintiffs in this case.
This conclusion is buttressed by the Comment to § 26 of the Musto Commission found at page 12 of Appendix E to a publication of the Commission entitled, "Hand Book for County Charter Study Commissioners, 1973," in which this language appears:
This section tries to state explicitly that while the legislature can mandate duties to the county the county will have the freedom to *11 decide how those duties will be carried out  except that the legislature can specifically forbid the county from consolidating or abolishing any particular unit heretofore existing, or it may in legislation passed hereafter specify that the county shall perform a task through a particular agency. All this section does, then, is to give the county power to alter, consolidate, or abolish presently existing agencies, whether mandated or not, provided that the county continue to perform the services which have been mandated to that agency and provided that the legislature does not now or hereafter require the existence of such an agency in any particular form.
I do not find that Title 18A brings the plaintiff organizations within the exception enunciated in that comment.
In support of its position, the defendant Board relies on three cases, each of which involves a so-called autonomous board or commission. In the case of Amer. Fed'n, State, Cty. Mun. Emp. v. Hudson Welfare Bd., 141 N.J. Super. 25 (Ch. Div. 1976), the issue was whether Hudson County had the power under the Charter Act to abolish the present structure of the Hudson County Welfare Board. The argument against such action was that the Board was legislatively mandated to operate as an autonomous body under Title 44 and thereby required the continuation of the Board as a separate entity. After reviewing the legislative history of the Charter Act and the mandate contained in Title 44 the court reached the conclusion that even though the County was obligated to create a county welfare board, there was no requirement that such board remain autonomous, leading the court to the conclusion that the county had the power to abolish the board as it presently existed, pursuant to the powers bestowed on the county by the Charter Act.
In Union County Park Commission v. County of Union, 154 N.J. Super. 213, decided by Judge Feller in May 1976, the issue was whether Union County had the power under the Charter Act to abolish the present structure of the Park Commission, created in 1921 as a result of a public referendum and which was organized under Title 40. One of the arguments advanced by the Park *12 Commission was that the Charter Act encompassed only "agencies" and not commissions or boards, and consequently the voters could not have approved this action by the county. Judge Feller rejected this argument, pointing out that the voters were voting for a particular plan under the Charter Act and not voting for the final report of the Commission. He concluded that it was the intent of the Legislature to permit the county to bring the activities of the Park Commission within the parameters of the authority granted by the Charter Act, and accordingly ruled in favor of the county.
In yet another opinion involving Union County, Union Cty. v. State of New Jersey, 149 N.J. Super. 399 (1977), Judge Feller was again called upon, this time to determine the status of the Union County Mosquito Commission which was abolished by the county when it adopted its administrative code, the county having opted for the County Manager form of government set forth in the Charter Act. Again the argument was made that the commission was a state agency and not subject to the control of the county. At page 415 appears this significant language:
* * * the Optional County Charter Law gave to the people the right to choose whether they desired an autonomous or nonautonomous administration of their agencies. That law is merely the vehicle which permits county residents to choose to have a direct voice in the expenditure of funds and the making of policies by bringing that agency under the direct control of county government and expressing their desires at the polls.
The Court again held in favor of the county, upholding its action in abolishing the commission and providing for those services in a different fashion.
I find the Atlantic Community College case, supra, 59 N.J. 102 to be inapposite. That case was decided against the background of different legislation, and because I find that the Charter Act supersedes Title 18A, I do not consider the holding of Atlantic to be applicable here.
*13 I find that there is language in that case to substantiate this position for there appears this statement:
Since the County College Law was enacted subsequent to the Civil Service Law and is in conflict with it, we can only conclude that the legislature meant to exclude county college employees from Civil Service. [at 112]
Based on the foregoing reasons and precedents, and applying the legislative direction contained in § 30, namely,
The grant of powers under this act is intended to be as broad as is consistent with the Constitution of New Jersey and with general law relating to local government. The grant of powers shall be construed as liberally as possible in regard to the county's right to reorganize its own form of government, to reorganize its structure and to alter or abolish its agencies, subject to the general mandate of performing services, whether they be performed by the agency previously established or by a new agency or another department of county government. [Emphasis supplied]
I conclude that both the Mercer County Community College and the County Vocational Schools come within the ambit of the Charter Act; that they are not excluded as "units of government"; that they are "agencies" within the meaning of the act, and that legislation under Title 18A that is inconsistent with the Charter Act is superseded by the Charter Act.
Therefore, the first count of the amended complaint is dismissed with prejudice and without costs and all retraints previously ordered are lifted.
The second count of the amended complaint asks for an adjudication that defendants are not required under the Charter Law to establish plaintiff organizations as agencies of the county and thereby be subject to the Administrative Code. The court finds no justiciable issue raised by this count, the Charter Act clearly making it discretionary with the county as to whether the freeholders wish to bring all autonomous agencies within their control and subject to the Administrative Code. This count, too, is dismissed.