IN THE MATTER OF THE PEMBERTON TOWNSHIP
MUNICIPAL UTILITIES AUTHORITY.

Superior Court of New Jersey
Appellate Division

Submitted September 24, 1985—Decided October 16, 1985.

Before Judges ANTELL, SHEBELL and MATTHEWS.

DAVID M. SERLIN, for appellant.

IRWIN I. KIMMELMAN, Attorney General, for respondent (JAMES J. CIANCIA, Assistant Attorney General, of counsel; LEWIS A. SCHEINDLIN, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MATTHEWS, J.A.D. (retired temporarily assigned on recall)

This is an appeal from the order of the Department of Civil Service which affirmed the determination of the director that the Pemberton Township Municipal Utilities Authority was subject to the civil service laws.

The issues to be resolved in this case involve primarily questions of law. The factual record is scant. The facts recited in this section are taken from the Pemberton Township Municipal Utilities Authority's brief and the respondent's decision.

On July 11, 1969 the Township of Pemberton by ordinance established the Authority pursuant to *N.J.S.A.* 40:14B-1 *et seq.*, the municipal and county utilities authorities law. Prior to that action, in 1959 Pemberton Township adopted the State's civil service statutes in a referendum procedure provided for in *N.J.S.A.* 11:20-1 *et seq.* Construction of sewerage collection and treatment facilities began in 1973 and in 1975 these facilities became operative. The facility was designed to be regional to service Pemberton Township, Pemberton Borough and adjacent municipalities. The Authority has during its existence provided only sewerage treatment and collection services.

The initial determination made by the Director of County and Municipal Government Services that the civil service statutes applied to Authority employees not excepted under *N.J.S.A.* 40:14B-18 relied on the fact that Pemberton Township voluntarily subjected itself to those statutes and subsequently established the Authority. The determination cited as dispositive the Civil Service Commission's decision *In the Matter of Southeast Morris County Municipal Utilities Authority* (1980) (*"Southeast"*), which in turn relied upon the reasoning of the Appellate Division in an unpublished opinion in *Lindenwold Borough Municipal Utilities Authority v. Civil Service Commission,* No. A-2008-71, (App.Div. Jan. 16, 1973) (*"Lindenwold"*). The *Southeast* and *Lindenwold* decisions are fully set forth in the appellant's appendix.

The Commission's decision emphasized two points. First, the Commission stressed that the Authority was "established by and servicing a Civil Service jurisdiction, [and therefore] is subject to the provisions of Title 11, Civil Service." The Commission stated "the critical question is not whether a utilities

authority is an agency of a township that is under Civil Service law, but instead whether the Legislature intended Title 11, Civil Service to be applicable to a utilities authority." The Commission concluded that *N.J.S.A.* 40:14B–18's exemption from Title 11 of certain positions indicated the Legislature's intent to include under civil service law coverage other authority employees not specifically exempted. Second, the Commission noted that the Authority, as a creature of the State, could not challenge statutory classifications made by the. Legislature.

The Authority argues that application of the civil service statutes to some of its employees cannot be justified by a theory that the Authority has an agency relationship with Pemberton Township. The Authority asserts that the statutory scheme providing for its establishment indicates that it is designed to be an "independent entity." The agency theory was not significantly relied on by the Commission in its decision. This court, however, relied exclusively on that theory in its unpublished 1973 *Lindenwold* decision. The Commission relies on the recent opinion of this court in *Matter of Sussex County Mun. Utilities Authority*, 198 *N.J. Super.* 214 (App. Div.1985), certif. den. 101 *N.J.* 267 (1985), for the proposition that the agency issue need not be reached where legislative intent is clear from a reading of the enabling statute.

Two cases discuss the agency theory in the context of whether certain governmental entities are subject to the civil service statutes. In *State v. Parking Authority of the City of Trenton*, 29 *N.J. Super.* 335, 336 (App.Div.1954) the court considered the question whether employees of the Trenton Parking Authority were subject to civil service statutes. This court reviewed the structure and powers of the Parking Authority. 29 *N.J. Super.* at 336–338, noted that a statutory provision describing the Authority as an agency was not controlling and concluded:

> The Parking Authority Law, *supra*, authorizes the authority to conduct its own fiscal affairs and produce its own revenue. The authority cannot depend upon moneys raised by taxation. It may undertake projects independent of

financial aid from the municipality. The municipality is not liable for any obligations incurred by the authority. The municipality can in no manner circumscribe the activities of the authority which are performed in accordance with the statute. All this makes it plain that the parking authority, although created by and in a municipality, is an independent public corporate entity, distinct and separate from the municipality. [29 *N.J. Super.* at 338–339].

For these and other reasons to be discussed this court concluded that the Parking Authority employees "do not have civil service status." 29 *N.J.* Super. at 339–340.

In *Atlantic Community college v. Civil Service Commission,* 59 *N.J.* 102 (1971) the Supreme Court considered the analogous question whether "nonprofessional and noninstructional employees of county community colleges in counties which have adopted Civil Service are subject to Civil Service Law, *N.J.S.A.* 11:1–1 *et seq.*" 59 *N.J.* at 104. The court reviewed the structure and powers of community colleges and their various boards and concluded that "the legislative intent as manifested in *N.J.S.A.* 18A:64A–1 *et seq.*, and the operative effect of that act is that county colleges exist apart from, and independent in their internal affairs of the local county government." 59 *N.J.* at 109.

Both of these cases in resolving the agency issue, place emphasis upon the operating independence of the government entities involved. The unpublished decision in *Lindenwold* relies contrastingly on the statutory designation of utilities authorities as agencies in determining that civil service law applies to them. It should be noted that the *Lindenwold* analysis appears to be exactly the type of analysis that was rejected in the *Parking Authority* case. 29 *N.J. Super.* at 338.

In the recent case of *Matter of Sussex County Mun. Utilities Authority,* 198 *N.J. Super.* 214, 216 (App.Div.1985), certif. den. 101 *N.J.* 267 (1985), we considered "the narrow question as to whether a county municipal utilities authority is subject to the statutory provisions governing civil service." In addressing the agency theory, we made the following comments:

Our review of the cases cited by the Authority and by the Attorney General on behalf of the Civil Service Commission, such as *Atlantic Community College v. Civil Service Commission,* 59 *N.J.* 102 (1971) and *State v. Parking Authori-*

*ty of the City of Trenton,* 29 *N.J. Super.* 335 (App.Div.1954), persuades us only that these cases turn on the statutes involving the particular agency concerned. While general principles appear, none of these is final authority respecting statutes not there concerned. Only review of the enabling legislation is sufficient to lead to an understanding of that which the Legislature intended for that agency. Accordingly, we are also satisfied that the mere political association between a municipal or county agency and the parent municipality is insufficient to impose on the agency the civil service obligation of the parent, in the face of legislation structuring the agency which appears to be to the contrary. [198 *N.J. Super.* at 218].

A review of the statutory provisions governing municipal and county utilities authorities, *N.J.S.A.* 40:14B–1 *et seq.,* discloses that the authorities are afforded enough operative independence to support a conclusion that they should not be subject to civil service law under an agency theory. *Cf. Jordan v. Zidel,* 40 *N.J.* 244, 247–248 (1963) (comparing utilities authorities with sewerage and parking authorities and concluding they all are independent entities and, at the same time, agencies and instrumentalities of their creator municipalities). We find that the agency theory is a very superficial one that bears little, if any, relation to the real question of whether either the Legislature or the Authority's underlying constituency intended civil service law to apply.

The Authority next argues that the legislative intent that civil service laws not be applied to utilities authorities is evinced by *N.J.S.A.* 40:14B–18's granting to those authorities the power to "appoint and employ such other agents and employees as it may require and determine their duties and compensation." This argument appears to be based primarily on the following language contained in the Trenton Parking Authority opinion:

The above provisions are not compatible with the terms of *Title* 11 relating to municipal employees. For example, the Civil Service Law (*R.S.* 11:22–12) provides that no person shall be "appointed or employed under any title not appropriate to the duties to be performed nor assigned to perform the duties other than those properly pertaining to the position which he legally holds." Under the terms of the Parking Authority Law italicized above, the authority may delegate to its employees any duties it deems proper. This could not be done if *Title* 11 covered its employees. *Cf. East Orange v. Civil Service Com.,* 132 *N.J.L.* 181 (Sup.Ct.1944). [129 *N.J. Super.* at 339].

*See also Oughton v. Board of Fire Comm'rs,* 178 *N.J. Super.* 633, 648–649 (Law Div.1980) (discussing agency and conflict-of-

powers theories), mod. 178 *N.J. Super.* 565 (App.Div.1981), certif. den. 87 *N.J.* 367 (1981). The reasoning in *Parking Authority* is not convincing.

As noted, *N.J.S.A.* 40:14B–18 provides in part that: "Such municipal authority may also appoint and employ such other agents and employees as it may require and determine their duties and compensation." The provision cited in *Parking Authority*, *N.J.S.A.* 11:22–12, reads: "No person shall be appointed or employed under any title not appropriate to the duties to be performed nor assigned to perform duties other than those properly pertaining to the position he legally holds." A common sense reading of these statutory provisions leads to the conclusions that the former is designed to allow local authorities to define and establish necessary positions based on their special knowledge of their own needs, while the latter is intended to be a bulwark against unfair management practices occurring after the jobs and accompanying responsibilities are set up. *See, e.g., Marshall v. Hudson Co. Bd. of Chosen Freeholders*, 60 *N.J.Super.* 587, 595–596 (App.Div.1960) (after organizational transfer of employee, county had to keep her title commensurate to her duties pursuant to *N.J.S.A.* 11:22–12). Our research has not disclosed any conflicting powers of the Civil Service Commission to establish duties and compensation of utilities authorities' employees. With respect to duties and salaries *N.J.S.A.* 11:24–1 provides:

> The commission shall prepare classifications and *suggest standards of salaries* or wages to be paid officers and employees in the classified service of the several counties, municipalities and school districts operating under this subtitle. All officers and employees of such counties, municipalities and school districts shall conform to and comply *with the requests of the commission for information relative to duties*, qualifications, character of work, hours of service and compensation or rates of wages of the various grades of offices, positions and employments in their respective departments, boards, commissions and institutions in order that such standardization and classification may be made and established. [emphasis added].

The Commission's suggested salary standards are not binding upon local governmental units, *see N.J.A.C.* 4:1–7.1(b); *Bayonne v. Dougherty*, 59 *N.J.Super.* 288, 295–299 (App.Div.1960) (Commission has no authority to review local decision to with-

hold salary increases absent improper reasons), certif. dism. 34 *N.J.* 240 (1961), and the language of *N.J.S.A.* 11:24–1 makes it reasonably clear that local units are expected to define job duties and pass that information on to the Commission for classification purposes. There is therefore no basis for the argument that a legislative intent that civil service law not apply to utilities authorities is reflected by conflicting powers granted to those authorities and the Commission.

On the other hand there are many indications that the Legislature intended civil service law to apply to some utilities' employees. In the *Sussex County* case this court made the following comments about the legislative intent discernible from a reading of *N.J.S.A.* 40:14B–18:

> The competing entities here are both creatures of statute. In such case it is our obligation to discern the intent of the Legislature—the only source of the authority of each—respecting the question at hand and on that basis announce our conclusion. The standards and guidelines for statutory construction are myriad and have been the subject of as many notable opinions as there are individual canons. One postulate stands out among all these: If the intention of the Legislature is apparent form the words used, *i.e.,* the plain meaning of the statute involved, then the statute is not open to construction or interpretation, "and to do so in a case where not required is to do violence to the doctrine of the separation of powers." *Watt v. Mayor and Council of Borough of Franklin,* 21 *N.J.* 274, 277 (1956).
>
> . . . .
>
> Had the Legislature intended that the utilities authorities were in no wise to be subject to the civil service laws, language exempting certain positions from "the provisions of Title 11 of the Revised Statutes" would have been unnecessary and would be superfluous. Without particular regard for the honored maxim *inclusio unius est exclusio alterius* we note with respect the established proposition that "legislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless." *Hackensack Bd. of Ed. v. Hackensack,* 63 *N.J. Super.* 560, 569 (App.Div.1960). *Accord, Gabin v. Skyline Cabana Club,* 54 *N.J.* 550, 555 (1952) . . . . It is obvious to us that the Legislature intended that except for certain described positions, "the provisions of Title 11 of the Revised Statutes" should apply, otherwise the proscribed superfluity would exist.
>
> . . . .
>
> We also lay to rest any suggestion that our determination is founded on the argument of the Civil Service Commission that, pursuant to *State v. Clark,* 15 *N.J.* 334 (1954), the civil service law should be given a broad construction to bring employees within its operation. It is clear, at least in New Jersey, that beneficence in the purposes of a remedial statute does not warrant liberality in

construction which ignores the plain meaning of the language employed by the Legislature. *Wormack v. Howard,* 33 *N.J.* 139, 142–143 (1960). As is there borrowed from *Dixon v. Gassert,* 26 *N.J.* 1, 9 (1958) and iterated, "it is not our function to legislate; it is our duty to interpret. And in doing so we must give effect to the language employed by the legislative body in order to properly effectuate the legislative design." [198 *N.J. Super.* at 216–219; citation omitted].

A fair reading of the language of *N.J.S.A.* 40:14B–18 supports the conclusions reached by us in *Sussex County.* It is also worth noting that with respect to the expressly exempted positions, authorities are granted the power to set "qualifications, terms of office, for periods not to exceed 5 years, duties and compensation," while regarding other agents and employees it may only "determine their duties and compensation." *N.J.S.A.* 40:14B–18. The utilities authorities' more restricted powers with respect to other agents and employees appears to be significant inasmuch as the setting of qualifications and terms of office are focal points of civil service law. *See, e.g., N.J.S.A.* 11:21–3 (appointment and promotion according to merit and fitness); *N.J.S.A.* 11:21–6 (continuance of officers and employees in employment); *N.J.S.A.* 11:22–11.1 (rights of tenure and appeal); *N.J.S.A.* 11:23–6 (character of examinations).

The Authority also argues that the scant legislative history behind the passage of *N.J.S.A.* 40:14B–18, and a comparison of that provision to its counterpart in the sewerage authorities law, *N.J.S.A.* 40:14A–1 *et seq.,* indicates a legislative intent that utilities authorities be exempted from civil service law. We find that argument unpersuasive. Insofar as those materials shed light on legislative intent, they reveal that the changes in *N.J.S.A.* 40:14B–18 and its variance form *N.J.S.A.* 40:14A–5 e, may have resulted out of a fear of reposing too much authority, at the State's expense, in a local governmental unit. A review of the two collections of statutory provisions discloses that while sewerage authorities are designed to deal mainly with "the collection, treatment, purification or disposal of sewage or other wastes," *N.J.S.A.* 40:14A–2(1), utilities authorities have broader powers including not only those to be employed for sewage endeavors, *N.J.S.A.* 40:14B–2(1), but also those used for

"accumulation, supply or distribution of water, ... collection, treatment, recycling, and disposal of solid wastes, ... and ... for the generation of hydroelectric power ...." *Id.* A reading of the legislative materials contained in the record demonstrates that then Governor Meyner refused to sign into law a bill containing a version of *N.J.S.A.* 40:14B–18 that was identical to *N.J.S.A.* 40:14A–5 e because he felt that the "[g]rant of such broad, unrestricted powers and discretion ... is not in the public interest."

The most convincing position is that the Legislature intended civil service law to apply to utilities authorities' employees not specifically exempted.

██ The Authority's final argument is that the Civil Service Commission's decision to apply Title 11 to some of its employees imposes on it different obligations than are imposed on sewerage authorities and, therefore, denies it equal protection of the law. This argument is grounded in the fact that the Authority claims it performs only sewerage functions.

Although there may be some question as to whether a political subdivision can properly stand to challenge the constitutionality of a statute enacted by its creator, *compare Booth v. Tp. of Winslow,* 193 *N.J. Super.* 637, 639–640 (App. Div. 1984) (some question), *cert.* den. —— *U.S.* ——, 105 *S.Ct.* 781, 83 *L.Ed.*2d 776 (1985) *with Camden County v. Pennsauken Sewerage Auth.,* 15 *N.J.* 456, 470 (1954) (no question that it cannot); *see also Williams v. Baltimore,* 289 *U.S.* 36, 40, 53 *S.Ct.* 431, 432, 77 *L.Ed.* 1015, 1020 (1933) (municipal corporation may not assert Federal constitutional privileges and immunities against creator); *Newark v. New Jersey,* 262 *U.S.* 192, 196, 43 *S.Ct.* 539, 540, 67 *L.Ed.* 943, 946 (1923) (city cannot invoke equal protection clause against state); *City of New York v. Richardson,* 473 *F.*2d 923, 929 (2d Cir.1973) ("Political subdivisions of a state may not challenge the validity of a state statute under Fourteenth Amendment."), *cert.* den. 412 *U.S.* 950, 93 *S.Ct.* 3012, 37 *L.Ed.*2d 1002 (1973); we need not resolve it here. Since there is neither a suspect classification nor a fundamental

right involved in this case, the main question is whether the disparate treatment of sewerage and utilities authorities is rationally related to a legitimate governmental objective. According the statutory schemes the presumption of constitutionality, *see, e.g., Jordan v. Horseman's Benev. & Protect. Ass'n,* 90 *N.J.* 422, 433 (1982), our task is to determine "whether there is any conceivable state of facts bearing a reasonable relation to the object of the act which affords a basis for the classification." *Robson v. Rodriquez,* 26 *N.J.* 517, 524 (1958). Our view is that the greater powers and obligations of utilities authorities, and their potential impact on the welfare of the entire State, present a state of facts that provides a reasonable basis for imposing civil service law on some of such authorities' employees, while sewerage authorities' employees are exempt. The fact that the Authority states it has acted only as a sewerage authority makes no difference for the purpose of equal protection analysis. If the Authority desires to operate only as a sewerage authority, we know of no impediment to its reorganization under *N.J.S.A.* 40:14A–1 *et seq.*

Affirmed.