CITIZENS FOR CHARTER CHANGE IN ESSEX COUNTY AND BARBARA DOBBIN, PLAINTIFFS-APPELLANTS, v. ESSEX COUNTY BOARD OF CHOSEN FREEHOLDERS, AND NICHOLAS CAPUTO, COUNTY CLERK, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Decided October 29, 1986.

174

Before Judges ANTELL, BRODY and LONG.

*Robert Westreich,* attorney for appellants.

*Thomas M. McCormack,* attorney for respondent Essex County Board of Chosen Freeholders.

*Appet, Appet, Lorber & Nuzzi,* attorneys for respondent Nicholas Caputo, County Clerk (*Vincent J. Nuzzi,* on the letter brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Plaintiffs are an association that a decade ago worked to change the Essex County form of government to its present county executive plan, and an Essex County taxpayer. They challenge the legality of a resolution unanimously adopted by defendant Essex County Board of Chosen Freeholders (the Board) submitting a charter study question to the voters of Essex County at the general election to be held November 4, 1986. Plaintiffs' main point is that the Optional County Charter Law (the Charter Law), *N.J.S.A.* 40:41A–1 to 147, under which the county is governed, required the Board to act by ordinance and not by resolution. Plaintiffs sought an order in this action in lieu of prerogative writs that would restrain defendant Nicholas Caputo, the Essex County Clerk, from placing the question on the ballot. The trial court denied plaintiffs relief and we affirm.

The present controversy is heightened by recriminations between the Board and County Executive Peter Shapiro over responsibility for an increase in the current county tax rate approved by the Board July 2, 1986. That dispute is a prominent feature of the general election in Essex County in which Shapiro and Nicholas Amato are candidates for the office of county executive. At a political meeting, reported in the press on July 27, the County Executive urged that he be given "line-item veto power" to curb freeholder spending. The same article reported that the Board chairman "revealed" that he "is

researching whether a new charter study is warranted to make the executive more accountable."

In a later article the press reported that the chairman said at the Board's August 6 conference meeting that "he would ask his colleagues to support a new charter study commission to review Shapiro's ideas and examine anew the entire structure of county government." The Board adopted the charter study resolution at its August 13 meeting, the only regularly scheduled meeting until September 10. Consideration of the resolution was not listed on the written agenda of the August 13 meeting. A copy of the resolution had not been distributed to the County Executive "at least forty-eight (48) hours prior to the [August 6] conference meeting" as required by the Essex County Administrative Code.

To initiate a change in a county's form of government to a plan authorized by the Charter Law the board of freeholders must adopt a resolution or at least 10% of the registered voters must sign a petition directing that there be placed on the ballot the question of whether to appoint a charter study commission. *N.J.S.A.* 40:41A–1. "Whenever such resolution or petition shall be filed with him, the county clerk shall provide for the submission of the question at the next general election occurring not less than 60 days after the date of such filing." *Ibid.* The deadline for including the question on the November 4, 1986 ballot was therefore September 5. That deadline could only have been met by adopting a resolution; it would have taken too long to adopt an ordinance.

An ordinance under the Charter Law must pass a first reading, be advertised for further consideration for final passage, be the subject of a public hearing, and be finally passed at a meeting held at least 10 days from the first reading. *N.J. S.A.* 40:41A–101b. An ordinance does not become effective until at least 20 days after its final passage and, under the county executive plan, approval by the county executive. *N.J. S.A.* 40:41A–101c. If the county executive vetoes the ordinance, the board may override the veto by a two-thirds vote of

its full membership. *N.J.S.A.* 40:41A–41f. Thus, even if a special meeting had been called to accelerate the process of final passage and no veto followed, it would still have taken 30 days from the August 13 first reading before the ordinance would become effective. That would be a week after the September 5 deadline for the November ballot.

 Plaintiffs argue that despite the provision in *N.J.S.A.* 40:41A–1 that authorizes the use of a resolution, the Board was obliged to use an ordinance because *N.J.S.A.* 40:41A–38 prescribes that under the county executive plan the "legislative power shall be exercised by ordinance ..." except for specified instances that do not include submitting a charter study question.[1] They reconcile the apparent conflict between the two sections of the Charter Law by concluding that *N.J.S.A.* 40:41A–38 prohibits a county governed by a Charter Law plan from switching to another Charter Law plan. They support this conclusion by noting that where the voters have elected a charter study commission, *N.J.S.A.* 40:41A–8 establishes an advisory board whose members include "the director of the county board of freeholders," an office that the Legislature has established for traditional forms of county governments, *N.J. S.A.* 40:20–71, but not for Charter Law plans.[2]

When confronted with an apparent contradiction between two sections of the same statute, our task is to harmonize the sections to conform with the purpose of the legislation as a whole and to avoid an untoward result. *Brown v. Brown*, 86 *N.J.* 565, 576–577 (1981). A fundamental purpose of the Char-

---

[1]There are similar provisions for the three other forms of county charter government. *N.J.S.A.* 40:41A–52 (county manager plan), *N.J.S.A.* 40:41A–66 (county supervisor plan) and *N.J.S.A.* 40:41A–79 (board president plan).

[2]Under the county executive and county manager plans, the board selects a "chairman." *N.J.S.A.* 40:41A–39 and *N.J.S.A.* 40:41A–53. Under the county supervisor plan, the county supervisor presides over board meetings and there is no chairman. *N.J.S.A.* 40:41A–64b. Under the board president plan, the board elects one of its members board president. *N.J.S.A.* 40:41A–74.

ter Law "is to give the citizens of each county the right to select a change in their form of government." *Union Cty. Park Comm. v. Cty. of Union*, 154 *N.J.Super.* 213, 230 (Law Div.1976), aff'd o.b. 154 *N.J.Super.* 125 (App.Div.1977), certif. den. 75 *N.J.* 531 (1977). That purpose would be thwarted if the citizens of a county are denied the opportunity to select a Charter Law plan solely because they are operating under a different Charter Law plan.

The procedures in the Charter Law for adopting a plan are available to boards of freeholders and citizens of all counties. These procedures authorize "the board of freeholders ... of any county" to submit the charter study question to the public by adopting a resolution, not an ordinance. *N.J.S.A.* 40:41A-1. The legislative authority given all boards of freeholders to exercise by resolution the specific power to submit a charter question to the public supersedes the requirement under *N.J. S.A.* 40:41A-38 that a board governed by a charter plan must exercise by ordinance the general legislative power it derives from being a Charter Law county. "When there is a conflict between a general and a specific act on the same subject, the latter shall prevail." *W. Kingsley v. Wes Outdoor Advertising Co.*, 55 *N.J.* 336, 339 (1970). By its inadvertent omission in *N.J.S.A.* 40:41A-8 of the title "chairman" of the county board of freeholders as a member of the advisory board, the Legislature did not intend to deny county executive plan counties the opportunity to switch to another Charter Law plan.

 Plaintiffs next contend that absence of the charter study item on the printed agenda of the August 13 meeting renders the action taken on that item void under the Open Public Meetings Act, *N.J.S.A.* 10:4-6 *et seq.* A public body need not publish an agenda of a regular meeting. *N.J.S.A.* 10:4-9a, -8d and -18. Publication of an incomplete agenda of a regular meeting does not violate the Act unless the omission was intentional and designed to deceive the public. *Crifasi v. Governing Body of Oakland*, 156 *N.J.Super.* 182, 187 (App. Div.1978). The Clerk of the Board stated in an uncontroverted

affidavit that the item was not included in the printed agenda because he had not received a copy of the resolution in time. There is no evidence that its omission was intended to or did deceive anyone. The matter had been discussed at the August 6 conference meeting and was fully publicized in the press.

█ Finally, plaintiffs argue that the resolution must be invalidated because a copy of it had not been distributed to the County Executive in advance of its adoption, contrary to the provisions of the Essex County Administrative Code. They cite no authority for such relief and we know of none. Besides, the County Executive apparently does not share plaintiffs' concern. He does not claim that he has been prejudiced by not having received a copy of the resolution.

Affirmed.

